Habibollah YAZDCHI, Abbas Yazdchi, and Ahmad Yazdchi, Appellants,

v.

BANK ONE, TEXAS, N.A. and Chase Bank, Texas, N.A., Appellees.

No. 01–03–00793–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 21, 2005.

Rehearing Overruled June 16, 2005.

---

William E. Ryan, Law Offices of William E. Ryan, Houston, TX, for Appellant.

Jennifer L. Davis, McGlinchey Stafford, P.L.L.C., Maureen A. Wharton, Houston, TX, Bradley J. Johnson, Bank One Law, Compliance & Government Relations, Dallas, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and ALCALA.

## OPINION

TERRY JENNINGS, Justice.

Appellants, Habibollah Yazdchi ("Habibollah"), Abbas Yazdchi ("Abbas"), and Ahmad Yazdchi ("Ahmad") (collectively "the Yazdchis"), challenge the trial court's rendition of summary judgment in favor of appellees, Bank One, Texas, N.A. ("Bank One"), and J.P. Morgan Chase Bank, successor by merger to Chase Bank of Texas, N.A. ("Chase") (collectively, "the Banks"), in the Yazdchis' breach of contract suit to recover funds transferred to a court-appointed receiver from accounts held under their names at Bank One and Chase. In two issues, appellants contend that the trial court erred (1) in granting summary judgment in favor of the Banks and (2) in denying their motion to set aside the nonsuit of Habibollah's claims against Chase. We affirm.

### Factual and Procedural Background

Before the actions giving rise to this lawsuit, the State of Texas, in November 1999, filed suit against Ali Yazdchi ("Ali"),[1]

1. *State of Texas v. Ali Yazdchi, also known as Al Giovanni, Habibollah Yazdchi, Habibolah Yazdchi, Hosein Y. Mohamad, Mohamed H. Yazdchi, Abbas Yazdchi, A. Abbasyazdchi, Ahmad Yazdchi, Habibolloah Yazdchi, Ali Yazdi, Habibolah Yazdi, Amir Ahmad, Yazdchi Habi-* *bollah, Yazdchi Ali, Yazdchi Mohamad, Yazdchi Habibolah, Yazdchi Ahmad, A. Yazdchi Habibolah, A. Yazdchi, A. Yazdchi Abbas, A. Aliyazdchi, Sidney Sam Hessein, Mike Jones, Al Auto, Al Auto Sales, All's Cars, Ali's Cars, and Alis Cars,* No. 1999–57020, pending in

a son of Habibollah and a brother of Abbas and Ahmad, in which the court entered a temporary restraining order against Ali after finding that Ali may have been violating various provisions of the Deceptive Trade Practices–Consumer Protection Act.[2] In this separate lawsuit (the "Ali action"), the court concluded that, unless it restrained Ali from engaging in certain acts[3] and froze Ali's assets, Ali would "continue to use deception in the sale of motor vehicles to consumers" and "secrete his assets before a judgment for restitution [could] be entered."[4] The court ordered numerous financial institutions, including Bank One and Chase, that were "holding money in the name of and/or for the benefit of the above named Defendant," to freeze funds "belonging to or owned by, in the possession or custody of, standing in the name of, or claimed by said Defendant, or any of Defendant's aliases."[5] The order identified and "covered" twenty-four accounts, by account number, at eighteen separate financial institutions, including four "known" accounts at Bank One and two "known" accounts at Chase.

After conducting a hearing and considering evidence, the court entered a temporary injunction and appointed a temporary receiver.[6] The court found, among other things, that it appeared Ali "fraudulently kept all monies given to him by consumers ... and deposited same into bank accounts owned and controlled by [him]," "sought to conceal and/or dissipate assets," "used a number of different aliases and false addresses to conceal his identity, assets and whereabouts," and "sought to avoid paying creditors and judgments filed against him." The court also found that "if assets currently in the name (or alias name) of defendant and controlled by defendant are not frozen pending final trial, that said assets are subject to secretion and dissipation by the defendant." The court ordered financial institutions "holding money in the name of and/or for the benefit of the above named Defendant"[7]

the 61st Judicial District Court of Harris County, Texas, the Honorable John Donovan presiding.

2. TEX. BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 2002 & Supp.2004–2005).

3. The order restrained Ali Yazdchi from engaging in various acts and practices, including destroying his business records, purchasing and reselling vehicles from salvage or junk yards, turning back odometers on vehicles, and using any type of alias in selling or marketing goods or services.

4. The court noted that "[g]iven the likelihood of dissipation of Defendant's assets prior to rendition of a final judgment, the possibility of restitution for consumers will be remote unless an order freezing assets is granted."

5. The order expressly incorporated and applied to the names in the caption of the case.

6. While we are not presented with a full account of the proceedings in the Ali action prior to the entry of the temporary injunction, the record reveals that Habibollah testified at the injunction hearing concerning the funds in the bank accounts allegedly held in his name. Habibollah testified that some of his money was brought from Iran to the United States by friends, but that he did not know the name of the bank where his money was deposited, he had not personally made any deposits and he did not know the amount of money deposited. There is no indication that Abbas or Ahmad testified or otherwise participated in the Ali action.

7. The temporary injunction stated that it applied to financial institutions holding funds "[w]hether in defendant's name or an alias name, including all financial accounts standing in any of the following names, to wit: Hosein Y. Mohamad, A. Abbasyazdchi, Habibollah Yazdchi, Ahmad Yazdchi, Habibolloah Yazdchi, Ali Yazdi, Habibolah Yazdi, Ali's Cars, Ali Yazdchi, Yazdchi Habibollah, Amir Ahmad, Yazdchi Ali, Yazdchi Mohamad, A. Yazdchi, A. Yazdchi Abbas, Abbas Yazdchi, A. Aliyadchi, A. Aliyazdchi, or Habibolah Yazdchi."

to freeze funds "belonging to or owned by, in the possession or custody of, standing in the name of, or claimed by said Defendant, or any of Defendant's aliases."[8] The court appointed the Honorable David West as the temporary receiver "of Ali Yazdchi and any assets standing in the name of Ali Yazdchi or any alias of Ali Yazdchi."[9] The court authorized West to "take possession and charge of all property and assets of defendant Ali Yazdchi ... including, but not limited to, any deposits made by or for Ali Yazdchi (or any alias name of Ali Yazdchi) with any bank ... including all assets standing in an alias name of defendant." The temporary injunction contained a section titled "Direction to all Depository Institutions," which prohibited the Banks from transferring any property belonging to Ali "or standing in any alias name of" Ali. The temporary injunction also contained a section titled "Turn Over Order and Authority for Third Parties," which commanded all third parties, including the Banks, holding assets belonging to Ali, "jointly or singularly, or standing in the name of an alias of Defendant ... to immediately place all such assets in the custody" of the receiver. After the tempo-

rary injunction was entered and the receiver appointed, the receiver acquired possession of funds on deposit with the Banks in accounts held under the name of Ali or appellants.[10]

The Ali action concluded with the entry of an Agreed Final Judgment, Permanent Injunction, and Appointment of Permanent Receiver. In the final judgment, the court ordered that Ali, "his assigns, officers, agents, servants, employees, relatives[11] ... and any other persons in active concert or participation with him" be restrained from engaging in various acts including "[u]sing any type of name, other than 'Ali Yazdchi' in any type of transaction ...," "[r]epresenting, expressly or by implication, that defendant is any other person, other than 'Ali Yazdchi,'" "[a]cquiring, obtaining, or using any credit card under any name other than 'Ali Yazdchi,'" "[c]reating, altering, falsifying, modifying or changing real estate records ..., using alias names, hiding one's identity or clouding title to realty," and using incorrect social security numbers, Texas driver's license numbers or birth dates. The court also directed the distribution of the "frozen funds."[12]

---

**8.** In their brief, appellants concede that the temporary injunction "specifically applied to all financial accounts standing in the names of Habibollah, Abbas and Ahmad."

**9.** The aliases covered by the temporary injunction included those identified in the restraining order, the caption of the case, and the State's application for the restraining order and the temporary injunction.

**10.** The record concerning the funds held in accounts at Bank One under appellants' names contains some discrepancies. The restraining order expressly applied to four Bank One accounts. Appellants assert that they held three Bank One accounts and concede that two of those accounts were identified, by account number, in the order. Bank One claims that there were only two accounts held under Ali's or appellants' names. However,

Bank One admits that "all accounts under Ali Yazdchi's name or his aliases' names" were transferred to the receiver pursuant to the temporary injunction. The record concerning the Chase accounts is much clearer; the funds transferred from Chase had previously been held in two accounts opened in the name of "Yazdchi Habibollah," a name identified in the restraining order and the temporary injunction. Additionally, both of these accounts were specifically identified, by account number, in the restraining order.

**11.** "Relatives" was defined in the final judgment to mean any person who is Ali's father, mother, brother or sister.

**12.** The court ordered that a portion of the frozen funds be returned to Ali and that a portion of the frozen funds be transferred to

Over two years after entry of the final judgment, appellants brought this suit against Bank One and Chase, as well as the State and David West, seeking to recover the funds that had been transferred from the Banks to West pursuant to the temporary injunction. The Banks filed separate summary judgment motions. Bank One asserted that appellants' claims were barred because it turned over funds held in accounts in Ali's name or appellants' names pursuant to a court order. Bank One argued that it was required to comply with the restraining order and temporary injunction, and that it was not required to conduct an investigation into the ownership of the accounts prior to complying. Bank One also argued that section 31.010 of the Texas Civil Practice and Remedies Code [13] protected it from liability to appellants for compliance with the court orders.

Chase made similar arguments in its summary judgment motion. Additionally, Chase argued that its depository contract with Habibollah protected it from liability to Habibollah [14] and that Habibollah's claims were barred by section 59.008 of the Texas Finance Code [15] because Habibollah

failed to take any action to prevent it from complying with the court orders.[16]

The court rendered summary judgment in favor of the Banks, severed appellants' claims against the Banks from their claims against the other defendants, and entered a final judgment. Subsequently, Habibollah filed a motion for nonsuit, requesting that the court dismiss his claims against Chase with prejudice, which the court granted. After the nonsuit was granted, Habibollah changed counsel and filed a motion to set aside the nonsuit, claiming that his previous attorney did not have authority to file the nonsuit. The record does not contain a ruling by the trial court on this motion.

### Standard of Review

■ A party moving for summary judgment has the burden of proving that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Farah v. Mafrige & Kormanik*, 927 S.W.2d 663, 670 (Tex.App.-Houston [1st Dist.] 1996, no writ). When deciding whether there is a disputed, material fact issue precluding summary judg-

---

the State to be distributed as restitution to those injured by Ali.

13. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.010 (Vernon Supp.2004–2005).

14. The terms and conditions applicable to "Yazdchi Habibollah's" accounts with Chase included the following provisions:

If any action, including administrative proceedings, garnishment, tax levies, restraining orders or other action is brought against you or your account, you agree to protect us from any liability or expense which may result from the action unless that liability or expense is the result of our breach of this agreement with you.... We have the right to pay any money from your account that is required by law....

15. *See* TEX. FIN.CODE ANN. § 59.008 (Vernon Supp.2004–2005).

16. Bank One and Chase attached to their summary judgment motions copies of the restraining order, the temporary injunction, and the final judgment. Chase also attached an affidavit of its custodian of records along with the signature cards for the accounts held in the name of Yazdchi Habibollah, the terms and conditions applicable to those accounts, the statement sent to the address on the accounts after the funds were transferred to the receiver, indicating that a "forced debit" had been applied to the accounts, and the check sent to the receiver.

ment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549. When a defendant moves for summary judgment, it must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); *Farah*, 927 S.W.2d at 670.

Here, the summary judgment order did not specify the grounds upon which the trial court relied, and thus the appellants, as the non-movants, are required to show that each summary judgment ground alleged was insufficient to support summary judgment. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995). Accordingly, we will affirm the trial court's summary judgment order if any of the grounds presented in the supporting motion was meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### Turn Over

■ Appellants contend that the trial court erred in rendering summary judgment in favor of the Banks on their breach of contract claims for several reasons. First, appellants argue that their rights to the funds on deposit with the Banks were not adjudicated in the Ali action because they were neither parties nor privies to the Ali action, and therefore no order entered in that case could affect their legal rights.[17] Second, appellants argue that the Banks misinterpreted the orders entered in the Ali action as applying to funds held in accounts under their names, when such orders only applied to assets actually owned by, or in the possession of Ali. Appellants assert that the temporary injunction contained a "latent ambiguity" created by reference to Ali's aliases and that the lawful interpretation of the temporary injunction is that the order transferred assets standing in an alias name only when Ali was actually using the alias name as an alias. Appellants conclude that the Banks unlawfully transferred assets standing in their names without regard to whether Ali actually owned or was in possession of those assets. Third, appellants contend, by analogizing to garnishment law, that neither Bank was obligated by law to turn over funds in accounts held in their names. Appellants allege that the Banks "were on notice of conflicting claims of ownership to these accounts" by the account holders, and thus the Banks had a right and duty to interplead the funds. Fourth, appellants dispute the application of the statutory defenses cited by the Banks.[18]

■ We agree with the parties that the primary legal issue in this case concerns the legal effect of the orders, and primarily the temporary injunction, issued in the Ali action. We begin our analysis with consideration of the statutes that the

---

**17.** Appellants expend much effort in arguing that the doctrines of res judicata and collateral estoppel do not apply to preclude their claims against the Banks in this suit. However, neither Bank relied on these doctrines in their summary judgment motions, and discussion of these doctrines is not necessary to the disposition of this appeal.

**18.** We do not consider appellants' arguments, made for the first time in their reply brief, that the orders entered in the Ali action do not constitute competent summary judgment evidence or that Bank One did not establish that it relied on the orders in turning over the assets to the receiver. TEX.R.APP. P. 38.3.

Banks contend protect them from liability to the appellants for compliance with the court's orders entered in the Ali action.[19]

A financial institution[20] that complies with an order to turn over assets to a receiver is not liable for such compliance to:

(1) the judgment debtor;

(2) a party claiming through the judgment debtor;

(3) a co-depositor with the judgment debtor; or

(4) a co-borrower with a judgment debtor:

TEX. CIV. PRAC. & REM.CODE ANN. § 31.010 (Vernon Supp.2004–2005). Additionally, when a claim is made against a customer[21] of a financial institution, "[t]he customer bears the burden of preventing or limiting a financial institution's compliance with or response to [such] claim...." TEX. FIN. CODE ANN. § 59.008(c) (Vernon Supp.2004–2005).

Appellants argue that the protections afforded in section 31.010 do not apply because appellants are not suing the Banks for "compliance with a court order";

rather, appellants contend that no court order compelled the transfer of funds to the receiver. Appellants further assert that they do not fit the description of the four classes of persons to whom section 31.010 applies, and thus their claims against the Banks are not barred. Similarly, appellants argue that section 59.008 of the Finance Code does not apply because when the Banks transferred the funds based on an alleged misinterpretation of the orders, the Banks were taking actions that were not compelled by the orders, and thus they were not "complying with a court order." Appellants also assert that none of the turn over orders entered in the Ali action make a claim against them, the "customers" of the Banks, but instead make a claim against Ali, who appellants allege was not a customer of the Banks.

When we construe a statute, our primary goal is to ascertain and give effect to the legislature's intent in enacting it. *In re Canales,* 52 S.W.3d 698, 702 (Tex.2001). If a statute is clear and unambiguous, we need not resort to rules of construction or other aids to construe it. *Id.* However, we

19. The Texas Civil Practice & Remedies Code sets forth procedures that enable parties to seek aid from courts in order to reach property of a judgment debtor. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 31.002, 64.001(a) (Vernon Supp.2004–2005). For example, a court may "order the judgment debtor to turn over nonexempt property that is *in the debtor's possession or is subject to the debtor's control* ... to a designated sheriff or constable...." TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(b)(1) (Vernon Supp.2004–2005) (emphasis added). A court may also "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b)(3) (Vernon Supp.2004–2005). Furthermore, a receiver may be empowered to take charge and keep possession of a property and make transfers, subject to the control of a court. TEX. CIV. PRAC. & REM.

CODE ANN. §§ 64.031(1), (4) (Vernon Supp. 2004–2005).

20. "Financial Institution" is defined to include a state or national bank. TEX. CIV. PRAC. & REM.CODE ANN. § 31.010(d) (Vernon Supp. 2004–2005).

21. A "[c]laim against a customer" includes a "notice of freeze, ... notice of receivership, restraining order, injunction or other instrument served on or delivered to a financial institution and purporting to assert, establish or perfect any interest in or claim against an account ... held or established by the financial institution *in the name of the customer or for the benefit of the customer* ...." TEX. FIN. CODE ANN. § 59.001(2) (Vernon Supp.2004–2005) (emphasis added). " 'Customer' means a person who *uses, purchases, or obtains an account.* ..." TEX. FIN.CODE ANN. § 59.001(4) (Vernon Supp.2004–2005) (emphasis added).

may consider, among other things, the statute's objectives, the legislative history, and the consequences of a particular construction. *Id.*

A plain reading of section 31.010 reveals that the protections afforded by the statute apply to protect the Banks from liability to appellants for complying with the orders issued in the Ali action. The turn over orders are unambiguous and expressly required financial institutions, including the Banks, holding assets belonging to Ali, jointly or singularly, or standing in the name of any alias of Ali, including the names of the appellants, to immediately place all such assets in the custody of the receiver.[22] The Banks complied with the orders by turning over all such assets.

The protections afforded under section 31.010 entitled the Banks to comply with the plain language of the orders entered in the Ali action and to presume that prior to entry of those orders, the court found that the funds in the accounts held under appellants' names were effectively in Ali's possession or were subject to his control. *See* TEX. CIV. PRAC. & REM.CODE ANN. 31.010(b). While there is no evidence that the Banks participated in the Ali action or sought to determine the rationale for the court's decision to enter the temporary injunction, they were not required to do so. The Banks received a copy of the order, indicating that the court had found that Ali was using accounts at their institutions, under alias names, to deposit funds from illegal activities. The court commanded the Banks to turn over funds held in these accounts. Section 31.010 permitted the Banks to rely on the court's orders without conducting an independent investigation and without fearing that they would be subject to liability for complying with the plain language of the orders.[23]

■ Contrary to appellants' argument, the Banks were not required to disprove appellants' allegations of ownership in order to be entitled to summary judgment. Section 31.010 applies to protect the Banks from liability from a broad class of persons, not simply the named judgment debtor or the named account holder. TEX. CIV. PRAC. & REM.CODE ANN. § 31.010(b). The statute's inclusion of a broad class of persons indicates that the statute seeks to encourage a financial institution to comply with a turn over order even when there might be competing or unresolved claims

---

**22.** The record indicates that Habibollah testified during the temporary injunction hearing in the Ali action. After his testimony, the court entered the injunction, effectively finding that the accounts held under the name "Yazdchi Habibollah" contained funds actually held by Ali, in Ali's possession, or subject to Ali's control. Thus, in issuing the injunction, the court in the Ali action purposefully included, as aliases, the names of the appellants, while knowing that some of the aliases referred to Ali's real-life relatives. It is apparent that the court intended to cover these accounts when it issued the injunction. Whether the court's findings were correct is not at issue in this appeal.

**23.** Certainly, a financial institution could take actions not protected by section 31.010 and we generally agree with appellants' statement that section 31.010 would not apply if a financial institution mistakenly paid money out of an account. For example, if a financial institution received a turn over order directing it to turn over assets of Company ABC, but instead inadvertently turned over assets of Company XYZ, who maintained a separate account and was not identified in the order, nothing in section 31.010 would prevent Company XYZ from suing the institution. However, in this case, the order specifically identified accounts held in appellants' names, and it is clear from the record that the court intended to reach accounts held in appellants' names. Thus, the argument that the Banks mistakenly paid funds from appellants' accounts is not correct.

to the accounts identified in the order.[24] For example, under the statute, if an order compels a financial institution to turn over all accounts held by a judgment debtor, and the financial institution turns over funds held by the judgment debtor in a joint account, the financial institution would be protected from liability for claims brought by the joint account holder. TEX. CIV. PRAC. & REM.CODE ANN. § 31.010(b)(3). In this case, while Ali and appellants were not named joint account holders, the court in the Ali action necessarily found that the funds in "appellants' accounts" were actually in Ali's possession or subject to Ali's control. Thus, appellants can be characterized as "co-depositors" on the accounts that were subject to the turn over order, and appellants' claims are barred by section 31.010. *See id.*[25]

Moreover, section 59.008 of the Finance Code also protects the Banks from liability on the appellants' breach of contract cause of action. Section 59.008 states:

> The customer bears the burden of preventing or limiting a financial institution's compliance with or response to a claim subject to this section by seeking an appropriate remedy, including a restraining order, injunction, protective order, or other remedy, to prevent or suspend the financial institution's response to a claim against the customer.

TEX. FIN.CODE ANN. 59.008(c). Section 59.008 unequivocally places the burden on a customer of a financial institution to prevent a financial institution from complying with or responding to notices of freeze, receivership, restraining orders, and injunctions asserting or establishing claims against customer accounts. *Id.* Appellants did not present any evidence nor do they contend that they took any action, other than the filing of this lawsuit over two years after the entry of the temporary injunction and the final judgment, to prevent the Banks from complying with the orders.[26]

Finally, precedent in the garnishment context, which the parties agree is analogous to the facts presented in this case, supports the Banks' contention that they were not required to conduct an investigation into the ownership of the funds prior to complying with the court's orders in the Ali action. In *Bank One, Texas, N.A. v. Sunbelt Savings, F.S.B.*, 824 S.W.2d 557, 557–58 (Tex.1992), an individual judgment debtor commingled his personal assets with company assets in a company account at Bank One. The plaintiff obtained a writ of garnishment against Bank One to collect against the individual judgment debtor, but instead of naming the company in the writ, the plaintiff merely named the individual judgment debtor, who did not maintain an individual account at Bank One. *Id.* at 558. Bank One answered the writ by stating that it was not indebted to the company. *Id.* The supreme court affirmed judgment in favor of Bank One, holding:

> When a creditor wants to challenge title to funds held by a third party, the credi-

---

**24.** We do not address whether the Banks had the right to interplead the funds. However, we reject appellants' contention that the Banks had a duty to interplead the appellants' funds because the statute clearly contemplates that a financial institution may be compelled to turn over assets even when there is a potential for competing claims.

**25.** We note that although appellants argue that they are not suing the Banks for complying with a court order, appellants concede, in their brief, that the "primary legal issue in this case concerns the legal effect of the orders" issued in the Ali action.

**26.** *Chase has presented evidence that after it applied a forced debit to the account in response to the temporary injunction, it sent notice to the account holder, "Yazdchi Habibollah," and that it received no complaints until the filing of this lawsuit.*

tor should seek a writ of garnishment naming the nominal owner, not the true owner. The court is then responsible for determining true ownership. Requiring a garnishee bank to determine true ownership of its deposits improperly shifts judicial responsibility to the garnishee.

*Id.; see also Newsome v. Charter Bank Colonial,* 940 S.W.2d 157, 162 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (finding bank's failure to impound funds held in accounts of person not named in writ of garnishment did not violate the writ). Similarly, here the Banks received the restraining order and the temporary injunction, and based on the plain language of those orders, the Banks froze accounts held under appellants' names and turned over the funds in those accounts to the court-appointed receiver. The face of the orders commanded them to do so. Requiring the Banks to inquire into the true ownership of the accounts would improperly shift judicial responsibility to the Banks.

Accordingly, we hold that the Banks, as a matter of law, are not liable for the funds transferred from the appellants' accounts to the court-appointed receiver pursuant to the orders entered in the Ali Action. Although the orders entered in the Ali action did not adjudicate the appellants' ownership rights to the funds transferred by the Banks to the receiver, the Banks, under Civil Practice and Remedies Code section 31.010 and Finance Code section 59.008 and under common law, are protected from liability to the appellants for compliance with those orders.[27] We further hold that the trial court did not err in granting summary judgment for the Banks on the appellants' claim for breach of contract.

We overrule appellants' first issue.

### Nonsuit

In his second issue, Habibollah contends that the nonsuit of his claims against Chase vacated the summary judgment entered in favor of Chase, that the trial court should have granted his motion to set aside the nonsuit, and that his claims against Chase should be remanded to the trial court for further consideration. However, it is well settled that a party may not escape the effects of an unfavorable ruling on the merits by taking a nonsuit of its claims. *See Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853, 855 (Tex.1995) (stating that a decision on the merits, such as a summary judgment, is not vitiated by a nonsuit; rather, "[o]nce a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit."). Thus, Habibollah's contention that the nonsuit of his claims against Chase vacated the previous final summary judgment entered in favor of Chase lacks merit.[28]

---

27. In light of our holding that, based on statutory and common law, the appellants cannot pursue their claims against the Banks, we need not address whether Habibollah's claim against Chase is barred by the express terms of his depository contract with Chase.

28. We reject Chase's argument that Habibollah waived his right to appeal the summary judgment by filing his nonsuit with prejudice. In *Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853, 855 (Tex.1995), after the trial court rendered partial summary judgment in favor of the defendant, it entered a nonsuit dismissing the claims adjudicated by the summary judgment with prejudice. The supreme court reversed the court of appeals' holding that the summary judgment did not withstand the plaintiff's nonsuit, stating that "[a] nonsuit after such a judicial pronouncement results in a dismissal with prejudice as to the issues pronounced in favor of the defendant." *Id.* The supreme court went on to state that the court of appeals did not consider whether the trial court erred in entering summary judgment on the plaintiff's claims, and remanded these claims to the court of appeals for consideration. *Id.* Thus, *Hyundai Motor Co.* indi-

Having held that the trial court did not err in rendering summary judgment in favor of the Banks, we overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.

cates that, even if the appellant's claims against Chase were dismissed with prejudice after the entry of the summary judgment, this court should still consider whether the trial court erred in entering the summary judgment in favor of Chase.