Affirmed and Opinion filed September 26, 2006








Affirmed and Opinion filed September 26, 2006.

 

                                                                             

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00125-CV

_______________

 

ABBAS YAZDCHI and AHMAD YAZDCHI, Appellants

 

V.

 

TRADESTAR INVESTMENTS INC., Appellee

                                                                                                                                               


On Appeal from 61st District Court

Harris County, Texas

Trial Court Cause No. 01‑60971

                                                                                                                                               


 

O P I N I O N

In this breach of contract case,
Abbas Yazdchi (AAbbas@) and Ahmad (AAhmad@) Yazdchi (collectively, the AYazdchis@) appeal a summary judgment in favor
of TradeStar Investments, Inc. (ATradeStar@) on various grounds.  We affirm.

Background 








In November of 1999, the State of
Texas filed a consumer protection suit against Ali Yazdchi (AAli@), the brother of Abbas and Ahmad, in
which the trial court entered a temporary restraining order (the ATRO@) against Ali after finding that he
may have violated the Deceptive Trade Practices-Consumer Protection Act (the ADTPA@).[1]  
From the portions of the record from that case that are included in our record,
we can glean the following information.  In that lawsuit (the AAli action@),[2]
the court first issued a TRO, ordering numerous financial institutions,
including TradeStar, that were holding money in the name of or for the benefit
of Ali, to freeze funds held not only under Ali=s name, but also those of any of Ali=s aliases, including the names AAbbas Yazdchi@ and AAhmad Yazdchi.@[3]  TradeStar was notified of the TRO
by the Attorney General=s office on November 15, 1999, and complied with this order
by notifying the Attorney General that it had frozen an account held in the
names of Abbas and Ahmad (the AYazdchis= account@).[4]








After a hearing in the Ali action in
which Ali appeared with counsel, the trial court found that he had engaged in
several actions that violated the DTPA and had also Asought to conceal and/or dissipate
assets, . . . used a number of aliases and false addresses to conceal his
identity, assets and whereabouts, and . . . sought to avoid paying creditors
and judgments filed against him.@  The court entered a temporary
injunction (the Atemporary injunction@) and appointment of a temporary
receiver for Ali and any assets standing in either his name or any of his
aliases, specifically requiring TradeStar (among others) to turn over any such
assets to the custody of the temporary receiver (the Aturnover order@).[5] 
The Ali action concluded on April 14, 2000, with the entry of an Agreed Final
Judgment, Permanent Injunction, and Appointment of Permanent Receiver (the Aagreed judgment@).

On May 8, 2000, the permanent
receiver notified TradeStar of his appointment and intention to liquidate the
Yazdchis= account and provided TradeStar a
copy of the temporary injunction (including the turnover order) and agreed
judgment.  On June 5, 2000, the receiver notified TradeStar that he wished to
liquidate the Yazdchis= account pursuant to the trial court=s orders, and requested disbursement
of the funds to him, which TradeStar provided on June 9, 2000.  TradeStar
mailed a statement to the account address reflecting the reduction and the resulting
zero balance within seven business days of June 30, 2000.[6]

In November 2001, the Yazdchis
brought this breach of contract claim against TradeStar, among others,[7]
seeking to recover the $128,347.04[8] that
TradeStar had transferred to the receiver in the Ali action.  TradeStar filed a
motion for summary judgment, asserting that it was statutorily shielded from
liability because it had turned over the funds pursuant to a court order.  The
Yazdchis filed a response and their own motion for partial summary judgment,
alleging various legal bases in support of their claim.  TradeStar replied to
the Yazdchis= motion, further arguing, among other things, that the claims asserted in
this litigation are the same as those that had been:  (1) decided against the
Yazdchis in summary judgments granted in this action to former defendants Bank
One, Texas, N.A. (ABank One@)  and Chase Bank Texas, N.A. (AChase@); (2) thereafter severed; and (3)
affirmed on appeal by the First Court of Appeals.  The trial court granted
TradeStar=s motion for summary judgment.








Standard of Review

            A traditional summary judgment may be granted if
the motion and summary judgment
evidence show that, except as to the amount of damages, there is no genuine
issue of material fact and the moving party is entitled to judgment as a matter
of law.  Tex. R. Civ. P. 166a(c).
In reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference, and resolve any doubts, in
the nonmovant=s favor.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661
(Tex. 2005).  Where, as here, the parties file cross-motions for summary
judgment, one of which was granted and the other denied, we review the summary
judgment evidence presented by both sides, determine all questions presented, and
affirm or reverse accordingly.  See id.  We affirm a summary judgment if
any of the theories advanced are meritorious.  W. Invs., Inc. v. Urena,
162 S.W.3d 547, 550 (Tex. 2005).

The Yazdchis= Issues








The Yazdchis= first issue argues that TradeStar=s summary judgment evidence does not
show any deposit agreement or other contractual relationship between it and Ali
and TradeStar did not assert that the funds at issue actually belonged to Ali,
and thus TradeStar was not indebted to Ali in the underlying DTPA suit and
should not have turned over the Yazdchis= funds to the receiver for Ali.  The Yazdchis= second issue contends that the
temporary injunction in the Ali action was void as to them because they were
not parties or privies to the underlying action, and thus the trial court
lacked jurisdiction over them and TradeStar could not rely on such a void
order.[9]  Finally, the
Yazdchis= third issue asserts that TradeStar
has not proved a statutory defense to their breach of contract claim.

The First Court of Appeals has
already addressed these issues in its decision regarding two former defendants
in this case, and the Texas Supreme Court has denied the Yazdchis= petition for review in that
proceeding.  See Yazdchi v. Bank One, Tex., N.A., 177 S.W.3d 399 (Tex.
App.CHouston [1st Dist.] 2005, pet.
denied) petition for cert. filed, __ U.S.L.W. __ (U.S. April. 26, 2006)
(No. 06-5099).  In that case, the First Court determined that the defendants,
Bank One and Chase (the ABanks@), as a matter of law, were statutorily immune from liability
for transferring funds from the Yazdchis= accounts to the court-appointed
receiver pursuant to the orders entered in the Ali action:   

The Banks
received a copy of the order, indicating that the court had found that Ali was
using accounts at their institutions, under alias names, to deposit funds from
illegal activities.  The court commanded the Banks to turn over funds held in
these accounts.  Section 31.010 permitted the Banks to rely on the court=s orders without conducting an independent
investigation and without fearing that they would be subject to liability for
complying with the plain language of the orders.








Id. at 406.  The First Court also noted that Finance Code
section 59.008(c) places the burden on the customer of a financial institution
to prevent the financial institution from complying with such court orders.[10] 
Id. at 407.  Finally, the court found that precedent in the garnishment
context supported the Banks= contention that they were not required to conduct an
investigation into the true ownership of the funds because requiring them to do
so would improperly shift judicial responsibility to the Banks.  Id. at
408. 

In the present case, TradeStar was subject
to the same turnover order as the Banks, which expressly required TradeStar to
immediately place all assets Abelonging to defendant, Ali Yadzchi, jointly or singly, or
standing in the name of an alias of defendant@ in the custody of the temporary
receiver.  The caption of the order specifically indicates it pertains to AAli Yazdchi, also known as . . .
Abbas Yazdchi . . . [and] Ahmad Yazdchi.@  Based on the plain language of that
order, TradeStar turned over the funds in the Yazdchis= account to the court-appointed
receiver.  The Yazdchis do not contend that TradeStar took any action that was
not specified in the turnover order, and have provided no authority that
TradeStar could be liable for complying with it even if it was erroneous or
void, as they contend.

Because the Yazdchis= first, second, and third issues have
thus provided us no basis to depart from the First Court=s decision, they are overruled, and
the judgment of the trial court is affirmed.

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered and Opinion filed
September 26, 2006.

Panel consists of Justices Anderson,
Edelman, and Seymore.









[1]           See Tex. Bus. & Com. Code Ann. '' 17.41-17.63 (Vernon 2002 & Supp. 2006).  





[2]           The caption of this lawsuit reads as
follows:  AState of Texas, Plaintiff, v. Ali Yazdchi, also known
as . . . Abbas Yazdchi . . . [and] Ahmad Yazdchi.@





[3]           It is not apparent from our record what law
authorizes such control to be exercised over assets held in the name of a
non-named party or an alleged alias, or what safeguards exist or procedures
were followed to assure that assets of innocent account holders were not
affected.





[4]           The notification from the Attorney General
informed TradeStar of Ali=s aliases, including the Yazdchis= names, several addresses (including the address
listed on the Yazdchis= statement for the TradeStar account), several
different social security numbers, several dates of birth, and several driver=s license numbers.





[5]           Like the TRO, the temporary injunction
stated that it applied to financial institutions holding funds in either Ali=s name, or any of his alias names, again including
both AAbbas Yazdchi@
and AAhmad Yazdchi.@  





[6]           This statement indicated that a
disbursement of $128,325.84, described as check number 39599 and ACase 1999-57020@
(the cause number assigned to the Ali action), was made on June 9, 2000.





[7]           It appears that the State of Texas filed a
plea to the jurisdiction, which was granted prior to the summary judgment
contested here.





[8]           This amount presumably includes the
$128,325.84 disbursed by TradeStar to the receiver.





[9]           The Yazdchis also argue that TradeStar=s interpretation of the turnover order improperly
deprived them of property without due process of law, citing the Fourteenth
Amendment of the United States Constitution and Article 1, Section 19 of the
Texas Constitution.  See U.S.
Const. amend. XIV, ' 1; Tex. Const. art. I, ' 19.  However, because they did not present this
argument to the trial court in their summary judgment materials or otherwise,
we cannot consider it on appeal as grounds for reversal.  Tex. R. Civ. P. 166a(c).  Nor have they
shown how Tradestar=s compliance with the court orders from the Ali action
or anything else it did would constitute a governmental action as is required
to establish a Ataking@ claim under
either the due process clause of the Fourteenth Amendment or the due course of
law guarantees of the Texas Bill of Rights.  See Republican Party of Tex. v.
Dietz, 940 S.W.2d 86, 88-89, 91 (Tex. 1997).





[10]          However, Tradestar has cited no notice
requirements in the Finance Code that would alert customers of the need to take
such action.