Abbas **YAZDCHI** and Ahmad **Yazdchi**, Appellants,

v.

**TRADESTAR INVESTMENTS INC.,** Appellee.

No. 14–05–00125–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 26, 2006.

Rehearing En Banc Overruled Feb. 8, 2007.

William E. Ryan, Houston, for appellants.

David G. Cabrales, Jeffrey Andrew Logan, William Scott Hastings, Dallas, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and SEYMORE.

## OPINION

RICHARD H. EDELMAN, Justice.

In this breach of contract case, Abbas Yazdchi ("Abbas") and Ahmad ("Ahmad") Yazdchi (collectively, the "Yazdchis") appeal a summary judgment in favor of TradeStar Investments, Inc. ("TradeStar") on various grounds. We affirm.

## Background

In November of 1999, the State of Texas filed a consumer protection suit against Ali Yazdchi ("Ali"), the brother of Abbas and Ahmad, in which the trial court entered a temporary restraining order (the "TRO") against Ali after finding that he may have violated the Deceptive Trade Practices–Consumer Protection Act (the "DTPA").[1] From the portions of the record from that case that are included in our record, we can glean the following information. In that lawsuit (the "Ali action"),[2] the court first issued a TRO, ordering numerous financial institutions, including TradeStar, that were holding money in the name of or for the benefit of Ali, to freeze funds held not only under Ali's name, but also those of any of Ali's aliases, including the names "Abbas Yazdchi" and "Ahmad Yazdchi."[3] TradeStar was notified of the TRO by the Attorney General's office on November 15, 1999, and complied with this order by notifying the Attorney General that it had frozen an account held in the names of Abbas and Ahmad (the "Yazdchis' account").[4]

After a hearing in the Ali action in which Ali appeared with counsel, the trial court found that he had engaged in several actions that violated the DTPA and had also "sought to conceal and/or dissipate assets, ... used a number of aliases and false addresses to conceal his identity, assets and whereabouts, and ... sought to avoid paying creditors and judgments filed against him." The court entered a temporary injunction (the "temporary injunc-

1. *See* TEX. BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 2002 & Supp.2006).

2. The caption of this lawsuit reads as follows: "*State of Texas, Plaintiff, v. Ali Yazdchi,* also known as ... Abbas Yazdchi ... [and] Ahmad Yazdchi."

3. It is not apparent from our record what law authorizes such control to be exercised over assets held in the name of a non-named party or an alleged alias, or what safeguards exist or procedures were followed to assure that

assets of innocent account holders were not affected.

4. The notification from the Attorney General informed TradeStar of Ali's aliases, including the Yazdchis' names, several addresses (including the address listed on the Yazdchis' statement for the TradeStar account), several different social security numbers, several dates of birth, and several driver's license numbers.

tion") and appointment of a temporary receiver for Ali and any assets standing in either his name or any of his aliases, specifically requiring TradeStar (among others) to turn over any such assets to the custody of the temporary receiver (the "turnover order").[5] The Ali action concluded on April 14, 2000, with the entry of an Agreed Final Judgment, Permanent Injunction, and Appointment of Permanent Receiver (the "agreed judgment").

On May 8, 2000, the permanent receiver notified TradeStar of his appointment and intention to liquidate the Yazdchis' account and provided TradeStar a copy of the temporary injunction (including the turnover order) and agreed judgment. On June 5, 2000, the receiver notified TradeStar that he wished to liquidate the Yazdchis' account pursuant to the trial court's orders, and requested disbursement of the funds to him, which TradeStar provided on June 9, 2000. TradeStar mailed a statement to the account address reflecting the reduction and the resulting zero balance within seven business days of June 30, 2000.[6]

In November 2001, the Yazdchis brought this breach of contract claim against TradeStar, among others,[7] seeking to recover the $128,347.04 [8] that TradeStar had transferred to the receiver in the Ali action. TradeStar filed a motion for summary judgment, asserting that it was statutorily shielded from liability because it had turned over the funds pursuant to a court order. The Yazdchis filed a response and their own motion for partial summary judgment, alleging various legal bases in support of their claim. TradeStar replied to the Yazdchis' motion, further arguing, among other things, that the claims asserted in this litigation are the same as those that had been: (1) decided against the Yazdchis in summary judgments granted in this action to former defendants Bank One, Texas, N.A. ("Bank One") and Chase Bank Texas, N.A. ("Chase"); (2) thereafter severed; and (3) affirmed on appeal by the First Court of Appeals. The trial court granted TradeStar's motion for summary judgment.

## Standard of Review

A traditional summary judgment may be granted if the motion and summary judgment evidence show that, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference, and resolve any doubts, in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Where, as here, the parties file cross-motions for summary judgment, one of which was granted and the other denied, we review the summary judgment evidence presented by both sides, determine all questions presented, and affirm or reverse accordingly. *See id.* We affirm a summary judgment if

---

5. Like the TRO, the temporary injunction stated that it applied to financial institutions holding funds in either Ali's name, or any of his alias names, again including both "Abbas Yazdchi" and "Ahmad Yazdchi."

6. This statement indicated that a disbursement of $128,325.84, described as check number 39599 and "Case 1999–57020" (the cause number assigned to the Ali action), was made on June 9, 2000.

7. It appears that the State of Texas filed a plea to the jurisdiction, which was granted prior to the summary judgment contested here.

8. This amount presumably includes the $128,325.84 disbursed by TradeStar to the receiver.

any of the theories advanced are meritorious. *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005).

### The Yazdchis' Issues

■ The Yazdchis' first issue argues that TradeStar's summary judgment evidence does not show any deposit agreement or other contractual relationship between it and Ali and TradeStar did not assert that the funds at issue actually belonged to Ali, and thus TradeStar was not indebted to Ali in the underlying DTPA suit and should not have turned over the Yazdchis' funds to the receiver for Ali. The Yazdchis' second issue contends that the temporary injunction in the Ali action was void as to them because they were not parties or privies to the underlying action, and thus the trial court lacked jurisdiction over them and TradeStar could not rely on such a void order.[9] Finally, the Yazdchis' third issue asserts that TradeStar has not proved a statutory defense to their breach of contract claim.

■ The First Court of Appeals has already addressed these issues in its decision regarding two former defendants in this case, and the Texas Supreme Court has denied the Yazdchis' petition for review in that proceeding. *See Yazdchi v. Bank One, Tex., N.A.,* 177 S.W.3d 399 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) *petition for cert. filed,* —— U.S.L.W. —— (U.S. April 26, 2006) (No. 06–5099). In that case, the First Court determined that the defendants, Bank One and Chase (the "Banks"), as a matter of law, were statutorily immune from liability for transferring funds from the Yazdchis' accounts to the court-appointed receiver pursuant to the orders entered in the Ali action:

> The Banks received a copy of the order, indicating that the court had found that Ali was using accounts at their institutions, under alias names, to deposit funds from illegal activities. The court commanded the Banks to turn over funds held in these accounts. Section 31.010 permitted the Banks to rely on the court's orders without conducting an independent investigation and without fearing that they would be subject to liability for complying with the plain language of the orders.

*Id.* at 406. The First Court also noted that Finance Code section 59.008(c) places the burden on the customer of a financial institution to prevent the financial institution from complying with such court orders.[10] *Id.* at 407. Finally, the court found that precedent in the garnishment context supported the Banks' contention that they were not required to conduct an investigation into the true ownership of the funds because requiring them to do so

---

**9.** The Yazdchis also argue that TradeStar's interpretation of the turnover order improperly deprived them of property without due process of law, citing the Fourteenth Amendment of the United States Constitution and Article 1, Section 19 of the Texas Constitution. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19. However, because they did not present this argument to the trial court in their summary judgment materials or otherwise, we cannot consider it on appeal as grounds for reversal. TEX.R. CIV. P. 166a(c). Nor have they shown how Tradestar's compliance with the court orders from the Ali action

or anything else it did would constitute a governmental action as is required to establish a "taking" claim under either the due process clause of the Fourteenth Amendment or the due course of law guarantees of the Texas Bill of Rights. *See Republican Party of Tex. v. Dietz,* 940 S.W.2d 86, 88–89, 91 (Tex. 1997).

**10.** However, Tradestar has cited no notice requirements in the Finance Code that would alert customers of the need to take such action.

would improperly shift judicial responsibility to the Banks. *Id.* at 408.

In the present case, TradeStar was subject to the same turnover order as the Banks, which expressly required TradeStar to immediately place all assets "belonging to defendant, Ali Yadzchi, jointly or singly, or standing in the name of an alias of defendant" in the custody of the temporary receiver. The caption of the order specifically indicates it pertains to "Ali Yazdchi, also known as ... Abbas Yazdchi ... [and] Ahmad Yazdchi." Based on the plain language of that order, TradeStar turned over the funds in the Yazdchis' account to the court-appointed receiver. The Yazdchis do not contend that TradeStar took any action that was not specified in the turnover order, and have provided no authority that TradeStar could be liable for complying with it even if it was erroneous or void, as they contend.

Because the Yazdchis' first, second, and third issues have thus provided us no basis to depart from the First Court's decision, they are overruled, and the judgment of the trial court is affirmed.