Opinion issued December 18, 2008 










 





In The

Court of Appeals

For The

First District of Texas






NO. 01-07-01003-CV

__________


WOO KYUNG LEE AND JUNG LEE JONES PARTNERSHIP, Appellants


V.


KWIK INDUSTRIES, INC., Appellee






On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2004-17862






MEMORANDUM OPINION

 Appellants, Woo Kyung Lee and Jung Lee Jones Partnership (collectively
"Lee"), challenge the trial court's rendition of summary judgment in favor of
appellee, Kwik Industries, Inc., in Lee's suit against Kwik for breach of contract and
declaratory judgment. In six issues, Lee contends that the trial court erred in granting
Kwik summary judgment and in denying it a hearing on Kwik's summary judgment
motion.

 We reverse. 

Factual and Procedural Background

 In its original petition, Lee alleged that on October 14, 2002, Lee and Kwik
"entered into a written contract . . . for the purchase and sale of a property and
business . . . subject to an assumption of [an] SBA loan," Lee paid Kwik $120,000,
and Kwik "was to convey the assumption of the SBA loan and marketable title to the
property and the business." Lee further alleged that Kwik did not provide it with
"closing documents, title abstract[,] title insurance," or "documents showing
assumption of the SBA loan." Lee further alleged that the title to the property was
"unmarketable" and that it was "uncertain" as to "the terms of the loan" and "what
[was] happening to the payments." Lee requested a judgment "canceling the
contract" and ordering Kwik to return the $120,000 payment.

 Kwik filed special exceptions and an original answer, including a general
denial. Kwik also asserted, as an affirmative defense, that it had fully performed all
of its obligations under the contract. 

 Kwik then filed a summary judgment motion. In its motion, Kwik first argued
that it was entitled to summary judgment on Lee's breach of contract claim arising
from Kwik's alleged failure to provide Lee copies of the closing documents because
there was no provision in the contract requiring it to provide such documents, the
closing documents were equally available to all parties from Alamo Title Company,
and Kwik and Amresco Independence Funding, Inc., who was involved in the
closing, had actually provided Lee with copies of closing documents. Second, Kwik
argued that it was entitled to summary judgment on Lee's breach of contract claim
arising from Kwik's alleged failure to provide a title abstract or title insurance
because no provision in the contract required Kwik to provide Lee with an abstract
of title or title insurance and, although paragraph 3(b) of the contract required Kwik
to deliver a title commitment binding the title company to issue a title insurance
policy, such a commitment had been delivered to Lee. Third, Kwik argued that it was
entitled to summary judgment on Lee's breach of contract claim arising from Kwik's
alleged failure to provide documents relating to Lee's assumption of an existing SBA
loan because there was no provision in the contract requiring Kwik to provide Lee 
with copies of documents relating to an SBA loan, Kwik was not a party to any SBA
loan assumption and did not have copies of these documents and that Amresco had
provided Lee with copies of these documents. Finally, Kwik argued that it was
entitled to summary judgment on Lee's rescission claim because Lee could not
establish that it did not have an adequate remedy at law, any alleged breach of the
contract did not relate to the essence of the contract and did not constitute material
breaches, and Lee had never shown its intent to rescind or abandon the contract.

 Kwik attached to its motion a copy of the contract identifying Kwik as the
seller and "Hong Ju Lee and or assigns" as the purchaser, describing the property to
be conveyed, and stating a total purchase price of $1,698,510, which was payable by
a $120,000 cash down payment from Lee and Lee's assumption of two notes. The
contract also obligated Kwik to deliver a title commitment within ten days of the
contract and to deliver a general warranty deed, a title policy, and possession of the
property at closing. 

 Kwik also attached the affidavit of Ray Ellis, Kwik's custodian of records, in
which Ellis testified that the contract was the complete agreement between the parties
and that Lee was to pay consideration of a $120,000 down payment and assume a
"first lien note" with an original principal balance of $1,019,000 and a second lien
note with a modified balance of $596,088. Ellis attached to his affidavit a copy of the
"Agreement for Assumption of Indebtedness" for the first note that was dated October
14, 2002 and signed by a transferor, (1) Lee, and a lender. Ellis also attached a
document entitled the "Amresco Loan Commitment Revision/Modification," which
referenced the first note and which was executed by an Amresco representative on
October 14, 2002. Ellis explained that Kwik was not a party to the assumption
agreement for this first note and thus did not receive copies of the closing documents
relating to the assumption of the first note. Ellis also attached a copy of the
"Modification Agreement of Real Estate Note and Lien," which appears to pertain to
the second note referenced in the contract, and which was dated October 14, 2002. 
This modification agreement identified Kwik as the holder and Lee as the obligor,
and it was signed by Lee. Ellis stated that a copy of this modification agreement, as
well as copies of all the closing documents in connection with the closing that were
in Kwik's possession, were provided to Lee at the closing on October 14, 2002. Ellis
further stated that copies of all closing documents were available to all parties at
Alamo Title Company. Additionally, Ellis attached a copy of a "Commitment for
Title Insurance Issued by Alamo Title Insurance Company," which Ellis contended
was ordered by Kwik "pursuant to the terms of the [c]ontract and [s]ale and delivered
to [Lee] on or about May 20, 2004." The commitment states an effective date of May
20, 2004, identifies the proposed insured as Kwik, and states that the record title to
the property on the effective date "appears to be vested in" Lee by virtue of a deed
recorded under an identified Harris County Clerk's File number. Finally, Ellis
testified that title to the property sold pursuant to the contract was vested in Lee "by
virtue of deed recorded under" an identified Harris County Clerk's file number. 

 Kwik also attached deposition testimony from Timothy Meeks, a collections
officer for Amresco, and Margaret Surdick, a loan officer for Amresco who handled
loans and assumptions of notes. Meeks testified that the assumption agreement was
signed by Lee and approved by Amresco, thus allowing Lee to assume the first note.
Meeks explained that the "Amresco Loan Commitment Revision/Modification" form
was a document prepared and submitted to the loan committee to authorize Lee's
assumption of the first note. Meeks noted that in a "typical closing" a copy of the
closing documents would have been mailed to the parties and that any party to the
transaction could have contacted Amresco to obtain copies. Meeks also noted that
Kwik was not a party to the transaction and typically would not receive these
documents. Surdick testified that the assumption agreement was made between the
present owner of the note, the borrower, which was Lee, and Amresco. As the closer,
Surdick stated that by the time she handles a closing, all initial paperwork to assume
the loan has been completed and the loan has been approved. Surdick also stated that
Amresco was a preferred lender of the SBA and, as such, Amresco could make
decisions for the SBA on the assumption of a loan without having to actually obtain
the SBA's approval for the assumption. Surdick explained that Amresco was only
involved with the assumption of the first note. Surdick personally made copies of all
documents signed by Lee and sent those copies to Lee. She said that those documents
were not returned as undeliverable and that she had not received notice from Lee that
it did not receive the documents. She also said that Lee could have contacted her at
any time to obtain the closing documents. Surdick also explained that on an
assumption of a note, it would not be her function as the loan closer to determine
whether or not a new title policy or a commitment for a title policy had been obtained
before the transaction would be closed. Rather, a purchaser would have to obtain its
own title policy if it wanted one. Surdick did not offer any testimony about the
contractual provisions requiring the title policy or the title commitment in this case. 
 Following Kwik's filing of its summary judgment motion, Lee filed an
amended petition, adding a claim for a declaratory judgment that it had terminated the
contract. Lee then filed a response to Kwik's summary judgment motion, stating that
Kwik never signed the contract or returned a signed copy to Lee, rendering the
contract invalid and unenforceable. (2) Lee cited the contract's provision that stated that
the execution of the contract by the first party constituted an offer to purchase or sell
the property and that 

unless within five days from the date of the execution of the contract by
the first party, the contract is accepted by the other party and a fully
executed copy is delivered to the first party, the offer of this contract
shall be automatically revoked and terminated, and the earnest money,
if any, shall be returned to the purchaser." (3) 


 Lee argued that because the contract was never executed, it should have
terminated by its own terms. (4) Lee also argued that Kwik never delivered marketable
title because it had not delivered a title policy until May 20, 2004. Lee attached a
copy of a title report prepared by Alamo Title Company on November 28, 2005,
stating that title "appears good" in Lee by virtue of a deed, although Lee did not offer
any clear explanation as to how this document established that it lacked marketable
title. Lee also attached letters from it to Kwik, the first of which was dated December
8, 2003, indicating Lee's intent to terminate the contract. In this first letter, Lee
asserted that it "appear[ed] that closing could not occur" because the financing could
not be transferred. Lee complained of problems with the assignment of both notes. 
Lee asserted that these termination notices were provided in a reasonable time and
manner. 

 The trial court granted Kwik's summary judgment motion and dismissed Lee's
claims.

Standard of Review

 To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). When a defendant moves for summary judgment, it must either (1) disprove
at least one essential element of the plaintiff's cause of action or (2) plead and
conclusively establish each essential element of its affirmative defense, thereby
defeating the plaintiff's cause of action. Cathey, 900 S.W.2d at 341; Yazdchi v. Bank
One, Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.--Houston [1st Dist.] 2005, pet.
denied). When deciding whether there is a disputed, material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as true.
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Every
reasonable inference must be indulged in favor of the non-movant and any doubts
must be resolved in its favor. Id. at 549.

Summary Judgment

 In its first five issues, Lee argues that the trial court erred in granting Kwik
summary judgment because the contract does not contain Kwik's signature and Kwik
did not deliver the contract or a copy to Lee and there is a fact issue as to "whether
the contract was actually closed and materially breached . . . even if the contract was
closed"; the "evidence shows [Lee] properly terminated the contract"; Kwik "did not
provide marketable title"; the "absence of insurance materially affects [the property's]
market value"; Kwik did not provide the insurance policy "at the time of contract
closing date," but instead provided it with "severe delay," and that the title insurance
issued shows "zero balance"; and "the question remains [as to whether Kwik had]
fraudulently induced [Lee] to sign the contract with false representation" when Kwik
had "represented to convey the assumption of the SBA loan and marketable title" and
that "the assumption had been completed at the closing." In sum, Lee concludes that
fact issues precluded the trial court from granting summary judgment.

 The elements of a breach of contract claim are (1) the existence of a valid
contract between plaintiff and defendant, (2) the plaintiff's performance or tender of
performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage
as a result of the breach. Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631,
636 (Tex. App.--Houston [1st Dist.] 2002, pet. denied).

 Here, in its original petition, Lee complained that Kwik was required to convey
the assumption of the SBA loan and marketable title. Although these general
allegations lacked clarity, Lee then specifically complained of three ways in which
Kwik had breached the contract, one of those being that Kwik had failed to provide
"abstract or title insurance." In its amended petition, the live pleading at the time the
trial court granted the summary judgment motion, Lee again asserted, without
referencing any specific complaints, that Kwik had failed to perform its obligations
under the contract, had "materially breached" the contract, and had failed "to perform
any of the essential terms" of the contract.

 Kwik, in its summary judgment motion, sought to establish its entitlement to
judgment as a matter of law by disproving the essential element of breach. (5) Kwik
attempted to prove that it had not breached the contract in the manners specified,
including its failure to provide title insurance. In regard to this issue, Kwik argued
that, as a matter of law, it had not breached the contract because no provision in the
contract required Kwik to provide a title abstract or title insurance. Kwik
alternatively argued that Lee's claim failed, as a matter of law, because a title
commitment had been delivered to Lee. 

 In its efforts to establish, as a matter of law, that no breach of the contract had
occurred in this regard, Kwik cited the contract. However, the contract, a critical
piece of evidence relied upon by Kwik to support its summary judgment motion,
directly contradicted Kwik's assertions regarding Kwik's contractual obligations to
furnish both a title commitment and a title policy. Contrary to Kwik's assertions, the
contract specifically obligated Kwik to deliver a title commitment within ten days of
the execution of the contract and to deliver a title policy at closing. The summary
judgment record further establishes that Kwik had breached at least one of these
requirements--Kwik failed to provide a title commitment within ten days from the
date of the execution of the contract. Although Ellis testified that Kwik had ordered
the title commitment "pursuant to the terms of the [c]ontract and [s]ale and delivered
to [Lee] on or about May 20, 2004," Ellis, in his affidavit, did not address the
undisputed fact that the title commitment was not issued until May 2004, well after
the October 2002 closing in violation of the contract. Rather than provide any
summary judgment evidence addressing the specific provisions of the contract related
to the title commitment and the title policy, Kwik first attempted to wholly disregard
these provisions by arguing that they did not exist and, second, attempted to ignore
the specific requirement by providing Ellis's unsubstantiated testimony that Kwik had
complied with these terms. But the summary judgement evidence at least raises a fact
issue as to whether Kwik breached the contract with regard to the title commitment
obligation. And, resolving doubts in favor of the non-movant, the summary judgment
evidence also raised a fact issue in regard to Kwik's non-compliance with the title
policy obligation. Based on the specific grounds on which Kwik sought summary
judgment and the limited evidence supporting these grounds contained in the record
before us, we hold that Kwik did not establish as a matter of law that it did not breach
the contract. Accordingly, we further hold that the trial court erred in granting
summary judgment on Lee's beach of contract claim because fact issues remain as to
whether there was a breach of the contract, and Kwik presented no other ground for
summary judgment to support the trial court's judgment. (6)

 

 We sustain the portion of Lee's first issue related to Kwik's failure to establish
as a matter of law that it did not breach the contract.

Conclusion

 Because Kwik sought summary judgment on Lee's breach of contract claim on
the ground that it did not breach the contract and having held that Kwik failed to
establish as a matter of law that it did not breach the contract, we need not consider
Lee's remaining issues.

 We reverse the judgment of the trial court and remand for further proceedings
consistent with this opinion. 

 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.

1. The transferor, who appears to have been the original owner of the property, is not a
party to this proceeding.
2. Lee's response was contradictory. Lee asserted both that the contract was never
properly executed and was unenforceable and that the parties had entered into an
enforceable contract and, "through their conduct," had established their entry into the
contract.
3. The contract specifically stated that no earnest money was provided.
4. Lee did not address the fact that the parties still proceeded to closing on October 14,
2002.
5. In a portion of its summary judgment motion addressing Lee's rescission claim, Kwik
asserted that, even assuming it had breached the contract, its failure to, among other
things, timely provide Lee with a title commitment was "not the essence of the
agreement." However, Kwik did not present any arguments in the portion of its
summary judgment motion addressing the element of breach that its failure to provide
title commitments and insurance did not constitute material breaches or did not cause
Lee damages. Rather, Kwik's motion on the breach of contract claim was focused on
Kwik's efforts to prove, as a matter of law, that it had not breached the contract. 
6. As noted above, in its motion on the breach of contract claim, Kwik only sought to
prove, as a matter of law, that it had not breached the contract. Kwik did not argue,
or present any evidence, to establish, as a matter of law, that no material breach had
occurred. Kwik also did not move for summary judgment on Lee's breach of contract
claim on the ground that there was no evidence of a material breach. See Tex. R. Civ.
P. 166a(i). 


 On appeal, Kwik makes multiple arguments as to why the trial court's summary
judgment ruling should be affirmed, but these arguments, and any supporting
evidence, were not contained in its summary judgment motion. For example, Kwik
argues that Lee "produced no summary judgment evidence to support their contention
that time was of the essence in the [c]ontract or that appellants were damaged in
anyway as a result of [Kwik's] delay in delivering the title policy." But even if
Kwik's assertions on appeal are true, Kwik did not present the trial court with a
summary judgment motion on these issues.