Christine **FINGER**, Appellant,

v.

**Hugh M. RAY, III and Weycer, Kaplan, Pulaski, and Zuber, P.C., Appellees.**

No. 01–09–00404–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 5, 2010.

Rehearing Overruled Aug. 30, 2010.

Wayne H. Paris, Gillis, Paris & Heinrich, P.L.L.C., Houston, TX, for Appellant.

Billy Shepherd, Cruse, Scott, Henderson & Allen, L.L.P., Houston, TX, for Appellees.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

JANE BLAND, Justice.

A client sued her lawyer, alleging wrongful acts arising from his representation of her during bankruptcy litigation. The trial court granted summary judgment in favor of the lawyer and his firm on the client's claims, but it denied summary judgment on her claim for equitable disgorgement of the attorney's fees she incurred. After the trial court denied summary judgment on the fee forfeiture claim, the client abandoned it, and pursues on appeal only her claims for actual damages. The client contends that (1) the trial court erred in requiring expert testimony to prove causation of actual damages, and (2) her lay testimony about causation raises a material fact issue. We hold that the causal connection between the conduct alleged and any injury is not within a jury's common understanding, and thus the trial court properly ruled that expert testimony was necessary to show that the lawyer's acts caused the client actual damages. We affirm the judgment of the trial court.

### Background

*A Lawsuit and Judgment*

In 2003, Christine Finger borrowed $10,000 from David Reitman, who accepted

jewelry, which Finger valued at $29,495, as collateral. Although Finger repaid a portion of the loan and Reitman forgave the balance, he did not return the jewelry. Instead, he told Finger that someone had stolen it from his car. Finger hired a lawyer and sued Reitman for fraud, breach of contract, and various other causes of action. She moved for summary judgment on the breach of contract claim. The trial court granted it, entering an "Agreed Final Summary Judgment," awarding Finger $29,495 in damages and $1200 in attorney's fees. Shortly after the trial court signed the final judgment, Reitman told Finger that he planned to file for bankruptcy.

*The Bankruptcy Proceedings*

Upon hearing this news, Finger hired the defendants in this case, Hugh M. Ray and Weycer, Kaplan, Pulaski & Zuber, P.C., to represent her in collecting the judgment against Reitman and in any potential bankruptcy litigation. According to Finger, she hired Ray based upon his "express representations ... that he would collect [her] judgment through state court collection methods that would also provide [her] with attorney[']s fees and costs of pursuit and collection, that the judgment that [she] possessed was based upon fraud by Mr. Reitman, that if Mr. Reitman filed personal bankruptcy that he, Mr. Ray, would file an action in the bankruptcy court to except [her] claim out of the bankruptcy, and then he would further proceed with the collection outside of any bankruptcy proceeding."

Reitman filed for bankruptcy. During the pendency of the proceedings, Ray conducted an examination of Reitman. Ray and the bankruptcy trustee then jointly filed a Section 727 action to bar Reitman's bankruptcy discharge. *See* 11 U.S.C. § 727 (2006). Ray did not file a Section 523 action, which seeks to remove a specific debt from the debtor's discharge. *See*

11 U.S.C. § 523 (2006). Ultimately, the bankruptcy court approved a settlement between Finger and Reitman, and Reitman paid Finger $40,700. Finger paid $23,500 to Ray for attorney's fees and expenses. After paying her lawyer, Finger collected a net amount of $17,200 from the bankruptcy settlement in satisfaction of her state court judgment against Reitman.

*A Malpractice Lawsuit*

Finger then sued Ray for legal malpractice, breach of fiduciary duty, and breach of contract. Finger alleged that Ray (1) failed to file a Section 523 action to except her claim from Reitman's discharge, (2) failed to disclose that he had not filed a Section 523 action, (3) falsely represented to Finger that he filed a Section 523 action instead of a Section 727 action, and (4) billed and collected excessive and unreasonable fees. Finger later amended her petition to add a cause of action for DTPA violations. Finger sought a refund of the attorney's fees and expenses that she had paid to Ray, and $225,000 in mental anguish damages.

Ray moved for a traditional and a no-evidence summary judgment on all of Finger's claims, contending that Ray properly pursued a Section 727 action to collect Finger's judgment, and that his work obtained successful results. Thus, according to Ray, Finger could not meet the "suit within a suit" causation requirement to recover damages for her claims. Finger could not establish that, but for Ray's conduct, she would have obtained a better net result in the underlying suit. He also denied any misrepresentation and contended that Finger had failed to allege a serious breach of fiduciary duty that would require Ray to forfeit the fees he had charged her. In the no-evidence summary judgment motion, Ray challenged each ele-

ment of Finger's claims, including causation and damages.

In response, Finger amended her petition to drop her claims for legal malpractice and breach of contract and to proceed on her breach of fiduciary duty, DTPA, and fee forfeiture claims. In Finger's summary judgment response, she contended that whether she could have prevailed in a section 523 action is irrelevant to her claims, because Ray falsely represented to Finger that he would file a section 523 action, not a section 727 one, and Finger paid $23,500 in attorney's fees on the basis of this representation. Finger contended that these claims did not require her to prove "suit within a suit" causation, and she therefore did not need expert testimony to establish liability or causation.

Finger attached her affidavit and excerpts from her deposition testimony as summary judgment evidence. She averred that she had hired Ray based on his express representations that (1) he would pursue state court collection methods, (2) her judgment against Reitman was based upon fraud, (3) Ray would file an action to except Finger's claim out of Reitman's bankruptcy proceeding, and (4) Ray would proceed with collection outside of the bankruptcy proceeding. Finger further averred that but for these representations, she never would have hired Ray, but would have instead "simply filed [her] claim with the bankruptcy court and negotiated with Mr. Reitman on the settlement that [she] knew he would make, based upon conversations with him." Finger finally stated that, although she obtained a settlement with Reitman for $40,700, she would have been able to obtain the same settlement without having to pay $23,500 in attorney's fees, and thus Ray's services had no value to her. Finger did not offer an affidavit or testimony from a licensed attorney to support her claims.

The trial court granted summary judgment on Finger's DTPA claim and her breach of fiduciary duty claim for actual damages, and denied summary judgment on the breach of fiduciary duty claim to the extent that Finger sought equitable fee forfeiture. In the summary judgment order, the trial court observed that Finger lacked the necessary expert testimony to establish causation because "[a]ll of Plaintiff's claims ... are essentially claims that but for the alleged misrepresentations by Defendants about proceeding under section 523 as opposed to section 727 of the bankruptcy code, Plaintiff would have simply filed a claim in the bankruptcy court and settled her claim with the bankrupt debtor or otherwise recovered more than she netted based upon Defendant's efforts." The trial court stated that Finger required a bankruptcy law expert to create a fact issue "on her ability to have, at a minimum, collected more than what she netted in this case had she done as she claims she could have and merely 'filed a claim.'"

After the trial court's rulings, Finger non-suited her claim for fee forfeiture and appealed the trial court's grant of summary judgment.

## Discussion

*Standard of Review*

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). A party may move for no-evidence summary judgment on the ground that no evidence exists of one or more

essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX.R. CIV. P. 166a(i). The trial court must grant a no-evidence summary judgment motion unless the non-movant produces competent summary judgment evidence that raises a genuine issue of material fact. *Id.* To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding,* 289 S.W.3d at 848 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005)). We must review all of the summary judgment grounds on which the trial court ruled that are dispositive of the appeal, and we may consider any other grounds on which the trial court did not rule. *See Baker Hughes, Inc. v. Keco R. & D., Inc.,* 12 S.W.3d 1, 5 (Tex.1999) (citing *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 624 (Tex.1996)).

*Summary Judgment Objections*

■ Before addressing the merits, we review Finger's appellate challenges to the trial court's rulings on Ray's objections to statements in Finger's affidavit. The trial court sustained four of Ray's five objections. Finger challenges only two of these adverse rulings on appeal. First, Ray objected to Finger's assertion that, upon Reitman's bankruptcy, "[she] would have simply filed [her] claim with the bankruptcy court and negotiated with Mr. Reitman on the settlement that [she] knew he would make, based upon conversations with him,

and would not have paid Mr. Ray and his law firm from [her] own funds the sum of $23,500." Ray contended that the statement is speculative and based on hearsay. Second, Ray objected to Finger's statement that she would have been able to achieve the same settlement without paying $23,500 to Ray because she is not a competent witness to offer such an opinion.

■ We review the trial court's decision to sustain objections to summary judgment evidence for abuse of discretion. *Bradford Partners II, L.P. v. Fahning,* 231 S.W.3d 513, 521 (Tex.App.-Dallas 2007, no pet.); *Cruikshank v. Consumer Direct Mtg., Inc.,* 138 S.W.3d 497, 499 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). We hold that the trial court properly sustained the first objection on the basis of hearsay—the statement relies on an out of court declarant (Reitman), and Finger offered it for the truth of the matter asserted. *See* TEX.R. EVID. 801(d). With respect to the second objection, our causation analysis addresses this evidence, and thus Finger cannot show any harm from the trial court's ruling. *See Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001) ("Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted.").

*The Nature of the Claims*

According to Finger, Ray violated Sections 17.46(b)(5), (7), (12), and (24) and Section 17.50(a)(3) of the DTPA.[1] In addi-

---

1. Section 17.46(b)(5) prohibits the representation that services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(5) (Vernon Supp.2009). Section 17.46(b)(7) prohibits the representation that services are of a particular standard, quality, or grade, when they are of another. *Id.* § 17.46(b)(7). Section 17.46(b)(12) prohibits the representation that an agreement confers or involves rights, remedies, or obligations which it does not have or involve. *Id.* § 17.46(b)(12). Section 17.46(b)(24) prohibits the failure to disclose information concerning services which was known at the time of the transaction if the

tion, she alleges that Ray breached his fiduciary duty to her by concealing from her the approach he planned to take in collecting the judgment against Reitman.[2] Factually, Finger alleges that Ray violated the DTPA and breached his fiduciary duties to her by: (1) falsely representing to Finger that he would except Finger's judgment against Reitman from Reitman's bankruptcy; (2) falsely representing to Finger that Ray would seize Reitman's property separately from the bankruptcy proceeding to satisfy the judgment; (3) falsely representing to Finger that Ray would file a Section 523 action to except Finger's judgment from discharge; (4) failing to disclose that Ray would not file an action to except Finger's judgment from Reitman's discharge to induce Finger into employing Ray; and (5) billing and collecting excessive fees because Ray's services were unnecessary. Accepting these liability allegations as true, we examine whether Finger has shown that they caused her actual damages.

*Expert Testimony to Prove Causation*

■■■ The causation debate here is whether expert testimony to prove causation is required under these facts, and not the adequacy of a particular expert opinion, as Finger offered none. To prevail on a DTPA claim, the plaintiff must prove that the defendant's statutory violation is a producing cause of the injury. Tex. Bus. &

COM.CODE ANN. § 17.50(a) (Vernon Supp. 2009); *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex.2004); *Hoover v. Larkin*, 196 S.W.3d 227, 232 (Tex. App.-Houston [1st Dist.] 2006, pet. denied) ("A plaintiff may recover all damages, including attorney's fees, that are the result of the defendant's wrongful acts, but the burden remains on the plaintiff to demonstrate such causation."). To prevail on a breach of fiduciary duty claim, the plaintiff must prove that the defendant's breach of their fiduciary duties proximately caused the plaintiff's damages. *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.-Houston [1st Dist.] 2003, no pet.). Both proximate and producing cause encompass causation in fact, which requires proof that the defendant's act or omission was a substantial factor in bringing about the injury, without which the injury would not have occurred. *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex.1995); *Thomas v. CNC Invs., L.L.P.*, 234 S.W.3d 111, 124 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In addition to cause in fact, proximate cause also requires foreseeability. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex.2001); *Thomas*, 234 S.W.3d at 124.

■■■ If the damages sought are those which would have been recovered in an

---

failure was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. *Id.* § 17.46(b)(24). Additionally, Section 17.50(a)(3) prohibits unconscionable acts or courses of action. *Id.* § 17.50(a)(3).

2. Ray contended in the trial court that Finger's claims are really ones for legal malpractice that she improperly has recast as claims for breach of fiduciary duty and DTPA violations. *See Murphy v. Gruber*, 241 S.W.3d 689, 697 (Tex.App.-Dallas 2007, pet. denied) ("[C]haracterizing conduct as a 'misrepresen-

tation' or 'conflict of interest' does not alone transform what is really a professional negligence claim into either a fraud or breach-of-fiduciary-duty claim."); *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). As such, he argues, Finger was required to produce evidence from an attorney that Ray's conduct fell below a reasonable care standard. Because we affirm the summary judgment on lack of competent evidence of causation for each of Finger's theories, we do not reach Ray's contention that expert testimony was necessary to prove liability.

underlying suit save for the lawyer's wrongful conduct, then to establish causation, a plaintiff must prove a "suit within a suit": that, but for the lawyer's breach of his duty, the plaintiff would have recovered these damages. *Hoover*, 196 S.W.3d at 231. The trier of fact must have some basis for understanding the causal link between the attorney's wrongful conduct and the injury. Although a client's lay testimony can provide this link in some cases, in others, the "connection may be beyond the jury's common understanding and require expert testimony." *Alexander*, 146 S.W.3d at 119.

 Finger responds that her claims are independent claims for breach of fiduciary duty and DTPA violations, and neither claim requires Finger to prove "suit within a suit" causation. *See Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex.1998). On these facts, we disagree. A bankruptcy judge must evaluate and approve all settlements of claims against the debtor, thus, to prove causation, Finger's claims require proof that the results she would have obtained without Ray's representation would be better than she actually achieved with it. As the Texas Supreme Court observed in a similar case involving DTPA violations alleged against a lawyer: "[T]he decision-maker here was the bankruptcy judge ... [who] did not testify as to how he might have ruled if the case had been presented differently. Without expert testimony, the jury had no direct evidence explaining the legal significance of the omitted evidence." *Alexander*, 146 S.W.3d at 119.

Finger attempts to distinguish *Alexander* by contending that, if Ray had not made affirmative misrepresentations about his services to her, then she would never have hired him, and would not have incurred $23,500 in attorney's fees. In other words, regardless of the amount she might have recovered from Reitman without using Ray's services, she would not have expended the $23,500 she paid to him in fees. But this ignores Finger's recovery of over $40,000, and her net gain from Ray's representation. Finger did not sustain actual losses—rather, she made money on the legal pursuit of her bankruptcy claim. Proof that her gains would have been the same or higher without using Ray's services requires an evaluation of alternative litigation strategies and outcomes in the bankruptcy court. Such an evaluation is within the ambit of a legal professional, not a lay person.

Finger relies on the Fort Worth Court of Appeals' decision in *Delp v. Douglas* and the Fifth Circuit's decision in *Streber v. Hunter* to urge that she was the ultimate decision-maker in engaging Ray's services, and thus her lay testimony is sufficient to prove causation. *See Delp v. Douglas*, 948 S.W.2d 483, 495–96 (Tex.App.-Fort Worth 1997), *rev'd on other grounds*, 987 S.W.2d 879 (Tex.1999); *Streber v. Hunter*, 221 F.3d 701, 726–27 (5th Cir.2000). But in *Alexander*, the Texas Supreme Court rejected the analysis in those cases, noting that in both of them the clients "made the decisions and took the actions that resulted in their injuries" because of the lawyers' bad advice. *Alexander*, 146 S.W.3d at 119. In contrast, both in this case and in *Alexander*, whether the alleged wrongful conduct caused any damage hinges on the outcome of the underlying legal proceedings. *See id.* at 118–19. The loss here does not stem from Finger as the sole "decision maker," but requires a second piece: that, without hiring Ray, she would have obtained a better result, and netted more money than she did. *Id.; see also Hoover*, 196 S.W.3d at 233 ("To the extent she seeks attorney's fees as actual damages, [the plaintiff's] lack of causation evidence defeats her."). And, Finger made two decisions—not only the one to hire

Ray, but also the one to accept the court-approved settlement obtained after she employed Ray's services.

Finger in essence seeks a refund because of Ray's alleged misrepresentations, regardless of whether she sustained any loss from them. And had Finger chose to pursue a claim for equitable fee forfeiture based on a "clear and serious" breach of fiduciary duty, upon proof of such a claim, a refund she could seek. *See Burrow v. Arce,* 997 S.W.2d 229, 246 (Tex.1999). But Finger abandoned this claim in the trial court. She offered no evidence that the rate Ray charged or the hours he worked on her case were unreasonable, and she chose not to seek fee forfeiture based on wrongful conduct. Given her net recovery of $17,200, after attorney's fees, without expert testimony, the record contains no competent evidence that Ray's alleged wrongful conduct caused her actual damages; thus, we uphold the trial court's summary judgment. *See Alexander,* 146 S.W.3d at 119 ("Breach of the standard of care and causation are separate inquiries, however, and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other.").

*Mental Anguish Damages*

■ In addition to actual damages, Finger seeks damages for mental anguish due to Ray's alleged breach of fiduciary duty and DTPA violations. The DTPA allows a plaintiff to recover mental anguish damages if the plaintiff can establish that the defendant committed the actionable conduct knowingly or intentionally. TEX. BUS. & COM.CODE ANN. § 17.50(b) (Vernon Supp.2009); *see also City of Tyler v. Likes,* 962 S.W.2d 489, 496 (Tex.1997) ("Mental anguish is also compensable as the foreseeable result of a breach of duty arising out of certain special relationships."); *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 266–67 (Tex.App.-Corpus Christi 1991, writ

denied) (holding client could recover mental anguish damages for attorney's breach of duty of confidentiality). In evaluating the record, "we apply traditional 'no evidence' standards to determine whether the record reveals any evidence of a 'high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages." *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995) (citing *J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 43 (Tex.App.-Houston [1st Dist.] 1990, no writ)); *El-Khoury v. Kheir,* 241 S.W.3d 82, 87–88 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Here, Finger does not allege that Ray caused a physical injury to her, but a financial one. In such cases, although the law does not always require direct evidence of the nature, duration, or severity of mental anguish damages, "the absence of this type of evidence, particularly when it can be readily supported or procured by the plaintiff, justifies close judicial scrutiny . . . ." *Parkway Co.,* 901 S.W.2d at 444.

Finger attached excerpts from her deposition testimony to her summary judgment response to attempt to raise a genuine issue of material fact regarding the existence of mental anguish damages. Finger testified:

Q: Have you ever seen—and by "see," I mean been treated by or evaluated by any psychiatrist, psychologist or mental healthcare provider for mental anguish that you say was caused by Mr. Ray or Weycer Kaplan?

A: Not from the dates that you're requesting.

. . . .

Q: Ms. Finger, have there been any physical manifestations of this mental anguish you say you suffered as

a result of the conduct of Mr. Ray and Weycer Kaplan?

A: Yes, sir.

Q: What are those?

A: I had anxiety, heart palpitations and loss of hair, stress, just went in for a stress test and had to get— couldn't sleep.

Q: All as a result of Weycer Kaplan and Mr. Ray?

A: Well, I don't really have a lot of other stress in my life. I'm not a person that doesn't handle stress. I've lived through 9/11 in my industry. I live it every day. I've never been to any kind of therapists, doctors, help or anything else with any stress-related problems.

Q: Did. Mr. Reitman maybe cause some of that stress?

A: Oh, I'm sure he did but not something that I can't handle because I think that I'm the type of person that if something ends and is okay by me, then it's okay. But if something ends to where I feel like it can't be peaceful or without closure that has been totally mishandled, that's where the stress comes in.

In *Parkway*, Woodruff testified that she was "hot," "very disturbed," "[the situation] was just upsetting," and she was "just upset" and the Texas Supreme Court held that although Woodruff "felt anger, frustration, or vexation," these emotions did not rise to the level of compensable mental anguish. *Id.* at 445; *see also Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996) (holding that plaintiff's statement that she "worried ... a lot" did not establish compensable mental anguish damages). Similarly, Finger's testimony establishes that she felt worry, anxiety, and stress due to Ray's conduct. Finger's testimony does not, however, provide evidence of a "high de-

gree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger" and that caused a "substantial disruption in [her] daily routine." *Parkway Co.*, 901 S.W.2d at 444. We therefore hold that Finger fails to raise proof that supports the existence of mental anguish damages as the law defines it. *See id.*

### Conclusion

Because the causal connection between the alleged wrongful conduct and any actual damages sustained in this case is not within the common understanding of jurors, the law requires expert testimony to establish proximate and producing cause. We hold that the summary judgment record contains no evidence to raise a fact issue that the alleged wrongful conduct caused actual damages or mental anguish. We therefore affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

The majority errs in holding that appellant, Christine Finger, needed expert testimony to prove the causal connection between the alleged misrepresentations made to her by appellee, Hugh M. Ray, III, and her loss of $23,500, the amount she seeks in restitution for attorney's fees that she paid to Ray and his law firm based on the alleged misrepresentations. Finger is not seeking damages for what she would have recovered due to Ray's negligence in representing her. Rather, as she notes, "it is crystal clear that the economic damages sought by [her][are] in the nature of restitution for the loss of her fees paid to Ray and appellee, Weycer, Kaplan, Pulaski, and Zuber, P.C. (collectively "Ray"), ... because of intentional

false representation[s] made to her by Ray...."

I would hold that Finger's claims are independent of a claim for legal malpractice and require no expert testimony to raise a fact issue on causation. The majority errs in holding to the contrary. Accordingly, I dissent.

## Background

Finger obtained a judgment against David Reitman for $29,495 in damages and $1,200 in attorney's fees in settlement of a breach of contract claim against him. Reitman then filed for bankruptcy protection. Finger hired Ray to represent her during the process of collecting her judgment from Reitman and in any potential bankruptcy litigation.

Finger hired Ray based upon his "express representations ... that he would collect [her] judgment through state court collection methods that would also provide [her] with attorneys fees and costs of pursuit and collection[;] ... the judgment that [she] possessed was based upon fraud by Mr. Reitman[;] ... if Mr. Reitman filed personal bankruptcy then he, Mr. Ray, would file an action in the bankruptcy court to except [her] claim out of the bankruptcy[;] and ... [Ray] would further proceed with the collection outside of any bankruptcy proceeding." Ray did not file a "section 523 action" to remove Reitman's debt to Finger from discharge.[1] Rather, he filed a "section 727 action" to bar Reitman's bankruptcy discharge.[2] Ultimately, the bankruptcy court approved a settlement between Finger and Reitman for $40,700. Finger then paid $23,500 to Ray for fees and expenses, and she retained $17,200 from the settlement.

Finger, in her original petition, sued Ray for legal malpractice, breach of fiduciary duties, breach of contract, and violations of the Texas Deceptive Trade Practices Act ("DTPA"),[3] which she alleged were based on Ray's false representations to her that he would take certain steps to collect her judgment against Reitman. Finger alleged that these representations induced her to hire Ray and his firm, and Ray billed and collected excessive and unreasonable attorney's fees from her. Finger sought as damages the attorney's fees and expenses that she had paid to Ray, $225,000 in mental anguish damages, an equitable fee forfeiture, a declaration that Ray breached the employment contract, and attorney's fees. However, in her second amended petition, Finger dropped her legal malpractice and breach of contract claims after Ray filed his summary judgment motion.

## Standard of Review

To prevail on a summary judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, he must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey,* 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.,* 177 S.W.3d 399, 404 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). A defendant moving for a no-evidence summary judgment must allege that there is no evidence of an essential

---

1. *See* 11 U.S.C. § 523 (2006).

2. *See* 11 U.S.C. § 727 (2006).

3. *See* TEX. BUS. & COM.CODE ANN. §§ 17.46, 17.50 (Vernon Supp.2009).

element of the non-movant's cause of action. Tex.R. Civ. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148 S.W.3d 94, 99 (Tex.2004). The non-movant must then produce "more than a scintilla of evidence" to create a genuine issue of material fact on the challenged elements. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in her favor. *Id.* at 549.

### Causation Evidence

In her sole issue, Finger argues that the trial court erred in rendering summary judgment in favor of Ray because Texas law does not require expert testimony regarding a causal connection between an alleged misrepresentation and out-of-pocket damages for money paid in reliance upon the misrepresentation. She asserts that her DTPA and breach of fiduciary duty claims are not "fractures" of a professional negligence claim. Rather, they are separate and independent claims based not on Ray's legal representation of her but on his misrepresentations that induced her to hire him. In effect, she asserts that she was induced into hiring Ray for services she did not want or need.

### Finger's Claims

Attorneys owe a duty to their clients to act with ordinary care, and "[c]omplaints about an attorney's care, skill, or diligence in representing a client implicate this duty of ordinary care and sound in negligence." *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.,* 284 S.W.3d 416, 426 (Tex. App.-Austin 2009, no pet.). A lawyer "can

commit professional negligence by giving an erroneous legal opinion or erroneous advice, by delaying or failing to handle a matter entrusted to the lawyer's care, or by not using a lawyer's ordinary care in preparing, managing, and prosecuting a case." *Murphy v. Gruber,* 241 S.W.3d 689, 693 (Tex.App.-Dallas 2007, pet. denied). Such claims for negligence may not be fractured into separate non-negligence claims, such as breach of fiduciary duty or DTPA claims because "the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise." *Kimleco Petroleum, Inc. v. Morrison & Shelton,* 91 S.W.3d 921, 924 (Tex. App.-Fort Worth 2002, pet. denied) (citing *Averitt v. PriceWaterhouseCoopers L.L.P.,* 89 S.W.3d 330, 334 (Tex.App.-Fort Worth 2002, no pet.)).

However, the rule against fracturing professional negligence claims does not preclude a client from simultaneously asserting both negligence and non-negligence claims that arise out of common facts. *Beck,* 284 S.W.3d at 427 (citing *Deutsch v. Hoover, Bax & Slovacek, L.L.P.,* 97 S.W.3d 179, 189 (Tex.App.-Houston [14th Dist.] 2002, no pet.)). To do so, the client must "present a claim that goes beyond what traditionally has been characterized as legal malpractice," and not "merely reassert the same claim for legal malpractice under an alternative label." *Duerr v. Brown,* 262 S.W.3d 63, 70 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Whether a claim is a claim for professional negligence is a question of law, and we are not bound by the labels the parties place on the claims. *Beck,* 284 S.W.3d at 427–428. Regardless of the pleaded theory, if the crux of the complaint is that a plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice. *Kimleco Petro-*

*leum,* 91 S.W.3d at 924. Courts are to focus on whether "the facts that are the basis for an asserted cause of action implicate only the lawyer's duty of care or independently actionable fiduciary, statutory, contractual, or other tort duties." *Beck,* 284 S.W.3d at 428; *see also Deutsch,* 97 S.W.3d at 189–90 (if client's complaint more appropriately classified as fraud, DTPA, breach of fiduciary duty, or breach of contract, then client can assert claim other than professional negligence).

*DTPA Violations*

In her second amended petition, Finger alleges that during Ray's representation of her, he "committed breaches of fiduciary duties and violated [section] 17.46(b)(5)(7)(12) and (24) and [section] 17.50(a)(3)" of the DTPA by knowingly and intentionally (1) falsely representing to Finger that he would except her judgment against Reitman from Reitman's bankruptcy; (2) falsely representing to Finger that he would seize Reitman's property separately from the bankruptcy proceeding to satisfy the judgment; (3) falsely representing to Finger that he would file a Section 523 action to except Finger's judgment from discharge; (4) failing to disclose that he would not file an action to except Finger's judgment from Reitman's discharge to induce her into employing Ray, which she would not have done if Ray had disclosed that he would not file a Section 523 action; and (5) billing and collecting excessive and unreasonable fees because his services were worthless and obtained under false pretenses.

In determining whether a claim is merely one for professional negligence or one for DTPA violations, we consider the "difference between negligent conduct and deceptive conduct." *Latham v. Castillo,* 972 S.W.2d 66, 69 (Tex.1998). Finger's allegations against Ray go beyond mere negligence, and instead involve deception and misrepresentations made to secure employment. *See Trousdale v. Henry,* 261 S.W.3d 221, 232 (Tex.App.-Houston [14th Dist.] 2008, pet. denied); *see also Tolpo v. DeCordova,* 146 S.W.3d 678, 685 (Tex. App.-Beaumont 2004, no pet.) (per curiam) (plaintiff's failure to contend that defendant-attorney knowingly excluded required contract term or affirmatively misrepresented effect of contract did not support independent DTPA claim, separate from plaintiff's legal malpractice claim).

In *Aiken v. Hancock,* the San Antonio Court of Appeals distinguished between deceptive and negligent conduct. 115 S.W.3d 26, 29 (Tex.App.-San Antonio 2003, pet. denied). The plaintiff alleged that his attorney (1) falsely represented that he was prepared to try the plaintiff's case, (2) failed to reveal that he was not prepared to try the case, (3) falsely represented that an expert witness was prepared to testify, and (4) failed to reveal that the expert witness was not so prepared. *Id.* The court concluded that this conduct was "conceivably negligent," but not deceptive, and therefore the plaintiff's allegations did not support an independent DTPA claim. *Id.*

Here, however, Finger alleges that, to induce her into employing his firm, Ray willfully made misrepresentations to her regarding the actions that he would take to collect her judgment against Reitman. The gist of Finger's complaints against Ray is not that he gave her bad legal advice or did not adequately represent her, but that he deceived her into unnecessarily hiring him. *See Kimleco Petroleum,* 91 S.W.3d at 924; *Greathouse v. McConnell,* 982 S.W.2d 165, 172 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Finger has not alleged that Ray negligently informed her that her judgment against Reitman could be excepted from the bankruptcy discharge, but she instead alleges and pre-

sented some evidence that Ray made affirmative misrepresentations and engaged in deceptive conduct to induce Finger into hiring him.[4] *See Latham*, 972 S.W.2d at 69 (had plaintiffs alleged that defendant "negligently failed to timely file their claim" and not that he had affirmatively misrepresented that he had filed and was pursuing claim, then claim would properly be one for legal malpractice).

Ray argues that he cannot be held liable for any representations he made based upon his "professional judgment" because his conduct falls within the "professional services exemption" to the DTPA. The Texas Legislature has specifically provided that the DTPA does not apply to "a claim for damages based upon the rendering of professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." TEX. BUS. & COM.CODE ANN. § 17.49(c) (Vernon Supp.2009). Ray, however, raised the professional services exemption in his no-evidence motion for summary judgment, stating that legal services fall within the exemption. No-evidence summary judgment is only appropriate for essential elements of a claim or defense upon which the adverse party bears the burden of proof at trial. TEX.R. CIV. P. 166a(i). The professional services exemption from DTPA liability "is properly characterized as an affirmative defense that must be pleaded because it is a plea of confession and avoidance." *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 740 (Tex.App.-

Fort Worth 2005, pet. denied); *Cole v. Central Valley Chemicals, Inc.*, 9 S.W.3d 207, 210 (Tex.App.-San Antonio 1999, pet. denied). As an affirmative defense, Ray bore the burden to prove that his services fell within the section 17.49(c) exemption, and, thus, he could not move for no-evidence summary judgment on this ground. Section 17.49(c) also includes several exceptions to the exemption, three of which involve express misrepresentations of material facts and unconscionable actions that cannot be characterized as advice, judgment or opinion, and failure to disclose information in violation of section 17.46(b)(24). *See* TEX. BUS. & COM.CODE ANN. § 17.49(c)(1)-(3). Because Ray did not establish as a matter of law that his alleged misrepresentations did not fall within the exceptions to the professional services exemption, he is not entitled to summary judgment on the basis of this exemption. *See Gibson v. Ellis*, 58 S.W.3d 818, 826 (Tex.App.-Dallas 2001, no pet.) (where defendant did not address misrepresentations alleged in plaintiff's DTPA claim, defendant did not establish as matter of law that representations did not fall within section 17.49(c) exceptions). I would, therefore, hold that Finger has sufficiently alleged a claim for violations of the DTPA independent from a claim of legal malpractice.[5]

*Breach of Fiduciary Duty*

In addition to the duty to act with ordinary care, attorneys also owe fiduciary duties to their clients. *Willis v. Maverick*,

---

4. In its order granting and denying Ray's summary judgment in part, the trial court found that "there is at least a scintilla of evidence as to whether Defendants made a misrepresentation to Plaintiff." Ray does not cross-appeal this ruling.

5. Finger alleges that Ray violated five different sections of the DTPA, including section 17.46(b)(5), which prohibits the representation of services as one quality when they are

really of another. The Fourteenth Court of Appeals has previously held that alleging a violation of this section of the DTPA is a "recast claim for legal malpractice." *See Goffney v. Rabson*, 56 S.W.3d 186, 192 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). Sections 17.46(b)(7) and (12) prohibit similar representations. *See* TEX. BUS. & COM.CODE ANN. §§ 17.46(b)(7), (12).

760 S.W.2d 642, 645 (Tex.1988). The attorney-client relationship "is one for the most abundant good faith, requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception." *Goffney v. Rabson,* 56 S.W.3d 186, 193 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). In representing a client, an attorney must "render a full and fair disclosure of facts material to the client's representation." *Beck,* 284 S.W.3d at 429 (quoting *Willis,* 760 S.W.2d at 645). Thus, a professional negligence claim focuses on "whether an attorney represented a client with the requisite level of skill," while a breach of fiduciary duty claim focuses on "whether an attorney obtained an improper benefit from representing the client." *Beck,* 284 S.W.3d at 429 (quoting *Murphy,* 241 S.W.3d at 693). A breach of fiduciary duty "most often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations." *Goffney,* 56 S.W.3d at 193.

In *Goffney,* the plaintiff alleged that the defendant abandoned her at trial, did not properly prepare for trial, and misled her into believing that the case had been properly prepared. The court held that the plaintiff's allegations did not "amount to [allegations of] self-dealing, deception, or misrepresentations sufficient to support a separate cause of action for breach of fiduciary duty." *Id.* at 194. In *Beck,* the plaintiff contended that the law firm's failure to disclose the attorney's substance abuse problems breached the attorneys' fiduciary duties and resulted in an improper benefit—the attorney's fees paid by the plaintiff. *See Beck,* 284 S.W.3d at 431, 433. The court held that the firm's expectation of receiving fees from their continued representation of the plaintiff did not convert what was essentially a professional negligence claim into a claim for breach of fiduciary duty because the plaintiff "did not allege that the [firm's] failure to disclose the [attorney's] 'alcohol and substance abuse addictions' had anything to do with the pursuit of attorney's fees or an improper benefit." *Id.* at 434; *see also Murphy,* 241 S.W.3d at 699 (holding that plaintiffs did not state independent claim for breach of fiduciary duty when they did not allege that lawyers deceived them, pursued own pecuniary interests, or obtained improper benefit by continuing to represent both clients).

In contrast, Finger alleges that Ray made affirmative misrepresentations to her and engaged in deceptive conduct to induce her to hire his firm. Unlike in *Beck,* where the firm's receipt of attorney's fees for an improper benefit was not the focus of the plaintiff's complaint, here, Ray's receipt of attorney's fees based on his misrepresentation is the basis of Finger's suit. *See Beck,* 284 S.W.3d at 433–34. Finger's complaint is not ultimately about the quality of representation that she received, but that Ray's misrepresentations induced her to unnecessarily hire an attorney, which she would not have done had Ray not made the misrepresentations. Accordingly, I would hold that Finger has sufficiently alleged a claim for breach of fiduciary duty independent from a claim of legal malpractice.

### Expert Testimony Not Required

Because Finger's claims for DTPA violations and breach of fiduciary duty are independent of any claims for legal malpractice, expert testimony is not required to prove causation of her damages, an issue that is within the common experience of lay persons.

To prevail on a DTPA claim, a plaintiff must prove that a defendant's statutory violation is a producing cause of the injury. TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.2009); *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004); *Hoover v. Larkin*, 196 S.W.3d 227, 232 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) ("A plaintiff may recover all damages, including attorney's fees, that are the result of the defendant's wrongful acts, but the burden remains on the plaintiff to demonstrate such causation."). A plaintiff must establish that an "unbroken causal connection" exists between the actionable misrepresentation and the plaintiff's injury. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995).

To prevail on a breach of fiduciary duty claim, a plaintiff must prove that the defendant's breach of his fiduciary duties proximately caused the plaintiff's damages. *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Both proximate and producing cause encompass causation in fact, which requires proof that a defendant's act or omission was a substantial factor in bringing about the injury, without which the injury would not have occurred. *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex.1995); *Thomas v. CNC Invs., L.L.P.*, 234 S.W.3d 111, 124 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In addition to cause in fact, proximate cause also requires foreseeability. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex.2001); *Thomas*, 234 S.W.3d at 124.

In a claim for professional negligence arising from prior litigation, to establish causation, a plaintiff must prove a "suit within a suit," i.e., but for the attorney's breach of his duty, the plaintiff would have prevailed in the underlying case. *Hoover*, 196 S.W.3d at 231. The fact finder must have some basis for understanding the causal link between the attorney's negligence and the injury, and although the client's lay testimony may provide this link, in some cases the "connection may be beyond the jury's common understanding and require expert testimony." *Alexander*, 146 S.W.3d at 119. However, as previously discussed, Finger's claims against Ray are not merely disguised professional negligence claims, but are independent claims for breach of fiduciary duty and DTPA violations. Neither claim requires Finger to prove "suit within a suit" causation. *Latham*, 972 S.W.2d at 69.

In its summary judgment order, the trial court acknowledged that, generally, expert testimony is not necessary to prove causation for DTPA and breach of fiduciary duty claims. The trial court then, however, ruled that Finger did need expert testimony to create a fact issue on causation because all of her claims are "essentially claims that but for the alleged misrepresentations by [Ray] about proceeding under section 523 as opposed to section 727 of the bankruptcy code, [Finger] would have simply filed a claim in the bankruptcy court and settled her claim with the bankrupt debtor or otherwise recovered more than she netted based upon [Ray's] efforts." According to the trial court, Finger "required a bankruptcy law expert to create a fact issue on her ability to have, at a minimum, collected more than what she netted in this case had she done as she claims she could have and merely 'filed a claim.'" If Finger had alleged that she could have collected more than Ray negotiated, given that the bankruptcy judge must approve all settlements of claims against the debtor, to raise a fact issue on causation, Finger would indeed have needed testimony about what the bankruptcy judge would do, which requires expert testimony. *See Alexander*, 146 S.W.3d at 119

(decision-maker bankruptcy judge did not testify regarding how he might have ruled if case had been presented differently, leaving jury without expert testimony explaining legal significance of omitted evidence).

Finger, however, did not allege that, had she not hired Ray, she could have collected more than the $40,700 settlement Ray negotiated with Reitman or would have netted more than $17,200 in a settlement with Reitman. Rather, Finger asserts that had Ray not made affirmative misrepresentations, she would not have hired him at all, and would not have incurred $23,500 in attorney's fees. Finger might not have reached a settlement amount of $40,700 with Reitman without Ray's assistance, but regardless of what amount she would ultimately have recovered from Reitman, she would not have expended $23,500 in attorney's fees.

In support of her position, Finger relies on *Streber v. Hunter,* 221 F.3d 701, 726–27 (5th Cir.2000) and *Delp v. Douglas,* 948 S.W.2d 483, 495–96 (Tex.App.-Fort Worth 1997), *rev'd on other grounds,* 987 S.W.2d 879 (Tex.1999). Ray contends that this case is factually distinguishable from *Streber* and *Delp.* He asserts that the plaintiffs in those cases were the "decision-makers" whereas here, the "ultimate decision-maker" was the bankruptcy judge, who would determine whether Finger was entitled to a greater recovery than the one negotiated with Reitman by Ray. He argues, thus, that expert testimony was required to prove what the bankruptcy judge could or would do under the particular facts. *See Streber,* 221 F.3d at 726–27; *Delp,* 948 S.W.2d at 495–96.

However, the Texas Supreme Court, in distinguishing both *Streber* and *Delp* from the facts before it in *Alexander,* noted that, in both cases, "because of [the plaintiffs'] lawyers' bad advice, [the plaintiffs] made the decision and took the actions that resulted in their injuries." *Alexander,* 146 S.W.3d at 119. On the other hand, the issue in *Alexander* involved whether a bankruptcy judge would have decided the underlying case differently if another lawyer at the firm had handled the adversary proceeding. *See id.* at 118–19. Thus, the bankruptcy judge was the "decision maker," and the plaintiff had to produce expert testimony on how the judge would have ruled had the case been tried with a different attorney. *Id.*

Here, in contrast, Finger alleges that in making affirmative misrepresentations about the recovery that could be obtained and the procedures that Ray would use to obtain that recovery, Ray induced Finger into hiring him and his firm and paying them $23,500 in attorney's fees. Regardless of what settlement amount the bankruptcy judge would have approved if Finger herself had negotiated with Reitman, Finger asserts that she would not have hired Ray and paid $23,500 in fees had the misrepresentations not been made. On her own, Finger might have recovered the same amount that Ray had negotiated, or even less, but Ray would not have obtained her money in payment of his attorney's fees. Based on Ray's misrepresentations, Finger made the decision to hire him instead of proceeding on her own to collect her judgment from Reitman, and this caused her to incur $23,500 in attorney's fees to Ray. Like the plaintiffs in *Streber* and *Delp,* Finger was the "key decision maker."

Because the causal link between Ray's alleged misrepresentations and Finger's alleged injury, her payment of $23,500 to Ray, is not beyond the common understanding of the jurors, Finger need not produce expert testimony to raise a fact issue on causation in regard to her DTPA and breach of fiduciary claims. *See Alex-*

*ander,* 146 S.W.3d at 119–20; *Streber,* 221 F.3d at 726–27; *Delp,* 948 S.W.2d at 495–96.

**Finger's Lay Testimony**

Finally, within her sole issue, Finger further argues that the trial court erred in sustaining Ray's objections to her affidavit testimony, which created a material fact issue on the element of causation. Ray made five objections to various statements in Finger's affidavit.[6] He objected on hearsay and speculation grounds to Finger's assertion that, upon Reitman's bankruptcy, "[she] would have simply filed [her] claim with the bankruptcy court and negotiated with Mr. Reitman on the settlement that [she] knew he would make, based upon conversations with him, and would not have paid Mr. Ray and his law firm from [her] own funds the sum of $23,500." The trial court sustained these objections. Ray also objected to Finger's statement that she would have been able to achieve the same settlement without paying $23,500 to Ray as speculative, conclusory, hearsay, and not based on personal knowledge. He also asserted that Finger, in her affidavit, did not affirmatively indicate that she is competent to testify on this matter. The trial court also sustained these objections.

Regardless, Ray only objected to select statements made by Finger in her affidavit. Ray did not object to Finger's testimony that he misrepresented the actions he would pursue in collecting her judgment against Reitman or her testimony that, but for his express misrepresentations, she would not have hired him and paid $23,500 in attorney's fees. Ray also did not object to Finger's testimony that his representations were "false, serious, and willfully made" or that, although he

could have "easily checked with the state court file to determine whether [Finger] was eligible for an action to take [her] judgment out of personal bankruptcy of Mr. Reitman," he did not do so, "but instead made the representations that caused [Finger] to pay him and his law firm $23,500." Even excluding Finger's testimony on which the trial court sustained Ray's objections, the remainder of Finger's testimony is sufficient to raise a genuine issue of material fact on the question of causation.

### Conclusion

I would hold that Finger has, independent of any claim for legal malpractice, alleged claims for breach of fiduciary duty and under DTPA sections 17.46(b)(24) and 17.50(a)(3), which do not require expert testimony on the issue of causation. Accordingly, I would sustain Finger's sole issue and remand the case to the trial court.

---

**6.** Although the trial court sustained four of Ray's five objections, Finger only challenges two of those rulings on appeal.