NO. 07-10-00327-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 16, 2012

———————————————————

BURNWOOD, INC., APPELLANT

v.

CRAIG, TERRILL HALE & GRANTHAM, L.L.P., H. GRADY
TERRILL AND ANDREW B. CURTIS, APPELLEES

———————————————————

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2008-543,077-A; HONORABLE DAVID GLEASON, JUDGE

———————————————————

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Burnwood, Inc. appeals a take-nothing summary judgment rendered by the trial court on claims asserted against appellees Craig, Terrill, Hale & Grantham, L.L.P. and H. Grady Terrill and Andrew B. Curtis (collectively, CTHG) for professional negligence and breach of fiduciary duty. We will affirm the judgment of the trial court.

## Background

In 2001, Rusty Cagle[1] leased from Burnwood a commercial space at 2419 Broadway in Lubbock, as the location of a restaurant called Flatlander's. At the time, Charley Ray owned Burnwood. Cagle's relationship with Ray was uneventful until July 2005 when Ray died and ownership of Burnwood passed to Ray's daughter Ravan Watson.

Greg Thornton was a close friend of Ray and helped him with the operation of Burnwood. In 2003, Thornton retained CTHG partner Hugh Lyle for representation in connection with two of Burnwood's real estate leases with other lessees, Outlaw Sports and Cold Stone Creamery Leasing Company. The record contains a copy of the Cold Stone lease, which Lyle helped negotiate, showing Burnwood as the landlord. A draft of the lease shows changes to its paragraph requiring that the tenant maintain certain insurance. The record also contains a letter to Outlaw, assertedly drafted or revised by Lyle. Among the issues addressed in that letter is Outlaw's failure to obtain the required insurance.

In January 2006, Cagle notified Watson he was renewing the lease. Nonetheless Watson sent Cagle a notice of termination letter, changed the locks on the building, and subsequently leased the premises to another party.

Seeking advice concerning his remedies against Watson, Cagle retained CTHG. The summary judgment evidence CTHG filed explains that the firm's conflicts check did

---

[1] In subsequent litigation, Cagle was styled, "Rusty Cagle d/b/a Red Bottoms a/k/a Flatlander's."

not reveal Lyle's 2003 work because the file was listed only under Thornton's name.  In February 2006, CTHG filed suit on behalf of Cagle against Burnwood and Watson. Cagle sought damages arising from the breach of the Burnwood lease agreement and tortious interference with a business relationship.  Burnwood defended on the claim that Cagle breached the lease first by failing to maintain insurance on the property as required by the lease. Cagle countered that Burnwood waived the insurance requirement.

Cagle supported his claim that Ray waived the insurance requirement with a November 2006 affidavit by Greg Thornton, who averred the condition of the restaurant's roof made obtaining insurance without substantial repairs, "impossible." Thus, he added, Ray and Cagle agreed that Ray was not required to repair the roof and Cagle was not required to obtain insurance coverage.  During trial of the case, Thornton testified for Cagle stating that Cagle maintained acceptable liability insurance coverage. Thornton also stated that Ray did not maintain insurance on the building and that Ray had difficulty obtaining insurance because of the condition of the roof.

The trial resulted in a money judgment for Cagle signed in September 2007. Burnwood appealed, contending the jury should have found that Cagle breached the lease first by failing to maintain insurance coverage on the property.  We affirmed the judgment.  *Burnwood, Inc. v. Cagle,* No. 07-07-0492-CV, 2009 Tex. App. Lexis 4066 (Tex.App.--Amarillo June 8, 2009, pet. denied) (mem. op.).

Meanwhile, in April 2008, Cagle, represented by CTHG, filed another suit against Burnwood, Watson, and others.  Among other things, the suit alleged the defendants

fraudulently transferred assets with the intent to "hinder, delay, or defraud" Cagle in his effort to enforce the September 2007 judgment.

Attorney Kevin B. Miller filed an answer for Burnwood, Watson and the other defendants. Some four days later, Cagle moved to disqualify Miller on the ground that as a director of one of the defendant entities he was a witness whose testimony would be "substantially adverse to his client's interests." Two days later Burnwood filed an "advisory of conflict of interest" asserting CTHG previously represented Burnwood.[2]

Burnwood then filed a third-party action against CTHG seeking damages for professional negligence and breach of fiduciary duty. The suit is based on contentions Burnwood was the actual client for whom Lyle performed his 2003 work despite the firm's file designating Thornton as the client, giving rise to a conflict of interest when the firm undertook to represent Cagle against Burnwood. Burnwood's pleadings alleged CTHG breached its fiduciary duties to Burnwood when it "failed to disclose the prior representation" of Burnwood, then recovered a judgment for Cagle against its former client. Burnwood plead also that CTHG made use of confidential information obtained through its prior representation.

With regard to the injury it suffered from CTHG's actions, Burnwood pointed to the judgment obtained by Cagle. As we understand the particulars of its theory, had Burnwood known during its litigation with Cagle over the lease that Thornton, with Lyle's advice, had enforced the requirement of tenant insurance in the Outlaw Sports and Cold

---

[2] The summary judgment record contains Burnwood's explanation that Watson did not become aware of Lyle's work for Thornton until Cagle's 2007 judgment against Burnwood was on appeal.

Stone Creamery leases, it would have impeached Thornton's testimony favoring Cagle's waiver theory and urged the evidence in defense of the waiver claim. And ostensibly the outcome of the 2006-07 litigation would have been different because the jury would have disbelieved Cagle and found he breached the lease first by failing to maintain insurance according to the terms of the lease.

CTHG filed traditional and no-evidence motions for summary judgment. The no-evidence grounds asserted Burnwood had no evidence to support the proximate cause and damage elements of its causes of action. Without stating the ground, the trial court rendered summary judgment in favor of CTHG and severed Burnwood's third-party action from the remainder of Cagle's suit. This appeal followed.

Analysis

Through two issues Burnwood asserts the record presents sufficient evidence to preclude summary judgment on the traditional and no-evidence motions for summary judgment of CTHG. When summary judgment is sought on multiple grounds and the trial court's order does not indicate the basis for its ruling, the summary judgment is affirmed on appeal if any theory advanced by the movant is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989). Accordingly, we will discuss only CTHG's no-evidence motion and whether Burnwood presented more than a scintilla of evidence of causation.

We review summary judgments *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). In so doing, we examine the entire summary judgment record in the light most favorable to the nonmovant, indulging every reasonable

5

inference and resolving any doubts against the motion. *Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 782 (Tex. 2007); *City of Keller v. Wilson,* 168 S.W.3d 802, 824-25 (Tex. 2005).

When a movant files a no-evidence motion in proper form under Rule of Civil Procedure 166a(i), the burden shifts to the nonmovant to defeat the motion by presenting evidence that raises an issue of material fact regarding the elements challenged by the motion. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006); *Weaver v. Highlands Ins. Co.,* 4 S.W.3d 826, 829 (Tex.App.--Houston [1st Dist.] 1999, no pet.). In other words, the nonmovant must respond to a no-evidence motion by presenting more than a scintilla of probative evidence on each challenged element. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003); *DR Partners v. Floyd,* 228 S.W.3d 493, 497 (Tex.App.--Texarkana 2007, pet. denied). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997).

Here, then, in response to the no-evidence motion, Burnwood was required to present the trial court with evidence raising a genuine issue of material fact on the challenged element of causation, specifically, evidence that the alleged wrongful conduct by CTHG was a proximate cause of damage to Burnwood. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 112 (Tex. 2009) ("To prevail on a legal malpractice claim, the plaintiff must prove the defendant owed the plaintiff a duty, the defendant breached that duty, the breach

6

proximately caused the plaintiff's injury, and the plaintiff suffered damages"); *Finger v. Ray,* 326 S.W.3d 285, 291 (Tex.App.--Houston [1st Dist.] 2010, no pet.) ("To prevail on a breach of fiduciary duty claim, the plaintiff must prove that the defendant's breach of their fiduciary duties proximately caused the plaintiff's damages"); State Bar of Tex., Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment PJC 115.18 (2010) (applying proximate causation standard in question inquiring of actual damages for breach of fiduciary duty). "The two elements of proximate cause are cause in fact (or substantial factor) and foreseeability. . . . Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. v. Mason,* 143 S.W.3d 794, 798-99 (Tex. 2004). The elements of cause in fact and foreseeability cannot be established by mere conjecture, guess or speculation. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995).

When a plaintiff alleges that some failure on an attorney's part caused an adverse result in prior litigation, the plaintiff must produce evidence from which a jury may reasonably infer that the attorney's conduct caused the damages alleged. *Alexander v. Turtur & Assocs.,* 146 S.W.3d 113, 117 (Tex. 2004); *Schlager v. Clements,* 939 S.W.2d 183, 186-87 (Tex.App.--Houston [14th Dist.] 1996, writ denied). This aspect of a malpractice plaintiff's causation burden is frequently referred to as the "suit-within-a-suit" requirement. *Tommy Gio, Inc. v. Dunlop,* 348 S.W.3d 503, 507 (Tex.App.--Dallas 2011, pet. denied) (citing *Greathouse v. McConnell,* 982 S.W.2d 165, 173 (Tex.App.--Houston [1st Dist.] 1988, pet. denied)). On this record, we believe suit-within-a-suit causation applies to Burnwood's breach of fiduciary duty claim, as well as

7

to its professional negligence claim, because the damage alleged is the judgment it suffered in the 2006-07 litigation.

Burnwood presented its summary judgment evidence of causation through the affidavit of a Texas board-certified personal injury trial attorney. The affidavit recited facts and standards of conduct, expressing its author's opinion that the facts showed CTHG breached its duties to Burnwood. It recited parts of Thornton's testimony in the Cagle trial, and asserted that because the firm's prior dealings with Thornton and Burnwood had not been made known, Burnwood "was deprived of" the ability to cross-examine Thornton with the Outlaw letter and the jury did not hear of Thornton's effort "to enforce a substantially similar insurance provision in a substantially similar lease." In the opinion of the author, CTHG obtained knowledge of the "inner workings" of Burnwood during the period of the Cagle-Burnwood lease. This evidence, he added, was presented at trial through the testimony of Thornton. The affidavit concluded with the opinion that the actions of CTHG "constituted professional negligence that proximately caused injury and harm to Burnwood, Inc., their former client." Missing from the affidavit, however, is any explanation, or even any statement of opinion, why cross examination of Thornton or information about his actions vis-à-vis other lessees would have countered his testimony that Ray did not enforce the insurance requirement against Cagle, or how such information would have led to a different outcome in Cagle's suit.

The key inquiry here is how the asserted acts and omissions of CTHG proximately caused injury to Burnwood. "[E]ven when negligence is admitted, causation

8

is not presumed. . . . Moreover, the trier of fact must have some basis for understanding the causal link between the attorney's negligence and the client's harm." *Alexander,* 146 S.W.3d at 119 (citations omitted). This standard is not met through expert testimony merely employing the term "proximate cause," *Chesser v. LifeCare Mgmt. Servs., L.L.C.,* No. 10-0291-CV, 2011 Tex. App. Lexis 7159, at *17-18 (Tex.App.--Fort Worth Aug. 31, 2011, pet. filed) (citing *Havner,* 953 S.W.2d at 711-12), or otherwise rendering an unsupported conclusion. *McIntyre v. Ramirez,* 109 S.W.3d 741, 749 (Tex. 2003) (noting conclusory statement of expert witness is insufficient to create a question of fact); *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) ("The relevant standard for an expert's affidavit opposing a motion for summary judgment is whether it presents some probative evidence of the facts at issue. . . . Conclusory affidavits are not enough to raise fact issues." (citations omitted)). A matter "is not so simply because 'an expert says it is so' . . . When the expert 'brings to court little more than his credentials and a subjective opinion,' this is not evidence that would support a judgment." *Havner,* 953 S.W.2d 706 at 712 (quoting *Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 421-422 (5th Cir. 1987)); *see also Burrow v. Arce,* 997 S.W.2d 229, 236 (Tex. 1999). Rather, "[t]he opinions must have a reasoned basis which the expert because of his 'knowledge, skill, experience, training, or education', (sic) is qualified to state." *Burrow,* 997 S.W.2d at 236 (citing Tex. R. Evid. 702).

Here the attorney's conclusions of causation, offered without explanation of how a jury in the retrial of the 2006-07 litigation would more likely than not return a verdict favorable to Burnwood after hearing evidence of the terms of the Outlaw Sports and Cold Stone leases, constitute no evidence of causation. *See Volkswagen of Am., Inc. v.*

*Ramirez,* 159 S.W.3d 897, 905-06 (Tex. 2004) (finding expert's opinion on causation constituted no evidence when he failed to explain how tests supported his opinion).

We agree with the trial court's grant of summary judgment because we conclude the summary judgment record presents no evidence the asserted breaches of duty by CTHG were a cause in fact of damage to Burnwood. Because resolution of this issue is dispositive of the case on appeal, it is unnecessary for us to consider Burnwood's remaining issue. Tex. R. App. P. 47.1.

## Conclusion

Finding no evidence of causation, we affirm the judgment of the trial court.

James T. Campbell
Justice